**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU**

| | |
|---|---|
| KISAAN DIE TECH PRIVATE LTD., *et al* | |
|                  Plaintiff, | |
| v. | Consol. Court No. 21-00512 |
| UNITED STATES OF AMERICA, | |
|                  Defendant, | |
|        and | |
| COALITION OF AMERICAN FLANGE PRODUCERS | |
|                  Defendant-Intervenor. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Duane W. Layton
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 263-3000

*Counsel to Kisaan Die Tech Private Ltd.*

Dated: June 30, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

STATEMENT PURSUANT TO RULE 56.2 ........................................................................... 1

    A.    Administrative Determination Under Review ........................................... 1

    B.    Statement Of Issues ....................................................................................... 2

SUMMARY OF ARGUMENT ................................................................................................. 2

STATEMENT OF FACTS ......................................................................................................... 3

STANDARD OF REVIEW ........................................................................................................ 6

ARGUMENT ............................................................................................................................... 7

I.      INTRODUCTION ..................................................................................................... 7

II.    APPLYING THE EXPECTED METHOD FOR CALCULATING THE "ALL OTHERS" RATE IS NOT REASONABLE ................................................................ 8

    A.    Dumping Margins Based On AFA Are Based On A Limited, Punitive Record, And May Not Be Representative Of The Experience Of Other Respondents ................................................................................................... 10

    B.    Selective Sampling Of One Mandatory Respondent May Not Be Representative Of A Larger Pool ............................................................... 16

III.   BASING THE ALL OTHERS RATE ON ONE RATE CALCULATED FROM FACTS AVAILABLE IS NOT AN APPLICATION OF THE EXPECTED METHOD ................................................................................................................. 20

    A.    *Godaco Seafood v. United States* Shows That Using A Sole AFA Rate Is A Departure From The Expected Method. .............................................. 20

IV.   THE "ALL OTHERS" RATE FROM THE PRIOR LTFV INVESTIGATION IS A MORE ACCURATE "ALL OTHERS" RATE TO USE IN THIS REVIEW ............... 22

    A.    There Is Evidence Of Cooperating Respondents On This Record From Previous Investigations That Is More Reflective Of The Current Review ............... 22

CONCLUSION ........................................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Administrative Decisions**

*Stainless Steel Flanges from India: Antidumping Duty Order,*
  83 Fed. Reg. 50,639 (Oct. 9, 2018)..........................................................................4

*Stainless Steel Flanges from India: Final Affirmative Determination of Sales at*
  *Less than Fair Value and Final Affirmative Critical Circumstances*
  *Determination,* 83 Fed. Reg. 40,746 (Aug. 16, 2018) ....................................4, 5, 21

*Stainless Steel Flanges from India: Final Results of Antidumping Duty*
  *Administrative Review; 2018-2019,* 86 Fed. Reg. 47,619 (Aug. 26, 2021)..........................2, 5

Stainless Steel Flanges from India: Issues and Decision Memorandum for the
  Final Results of the Antidumping Duty Administrative Review; 2018-2019
  (Aug. 20, 2021) ................................................................................ *passim*

*Stainless Steel Flanges from India: Preliminary Results of Antidumping Duty*
  *Administrative Review; 2018-2019,* 86 Fed. Reg. 11,234 (Feb. 24, 2021)..........................4, 5

**Cases**

*Albemarle Corp. & Subsidiaries v. United States,*
  821 F.3d 1345 (Fed. Cir. 2016)..........................................................8, 12, 16, 19

*Allentown Mack Sales & Sew., Inc. v. NLRB,*
  522 U.S. 359 (1998)..........................................................................................7

*Amanda Foods (Vietnam) Ltd. v. United States,*
  647 F. Supp. 2d 1368 (Ct. Int'l Trade 2009) ........................................................12

*Baroque Timber Indus. (Zhongshan) Co. v. United States,*
  971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014) ...................................................13, 14

*Bosun Tools Co., Ltd. v. United States,*
  493 F. Supp. 3d 1351 (Ct. Int'l Trade 2021) ...................................................11, 14

*Bosun Tools Co., Ltd. v. United States,*
  No. 21-1929, 2022 WL 94172 (Fed. Cir. Jan. 10, 2022) ..................................12, 13

*Changzhou Hawd Flooring Co. v. United States,*
  848 F.3d 1006 (Fed. Cir. 2017)..........................................................................16

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States,*
  701 F.3d 1367 (Fed. Cir. 2012)..........................................................................13

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984).............................................................................................6

*Consolidated Edison Co, v. NLRB*,
   305 U.S. 197 (1938).............................................................................................6

*Godaco Seafood Joint Stock Co. v. United States*,
   494 F. Supp. 3d 1294 (Ct. Int'l Trade 2021) ........................................18, 19, 20, 21

*Godaco Seafood Joint Stock Co. v. United States*,
   539 F. Supp. 3d 1286 (Ct. Int'l Trade 2021) ........................................................22

*Graphic Commc'n Int'l Union, Local 554 v. Salem-Gravure Div. of World Color
   Press, Inc.*,
   843 F.2d 1490 (D.C. Cir. 1988) ...........................................................................7

*Greater Boston Television Corp. v. FCC*,
   444 F.2d 841 (D.C. Cir. 1970), *cert. denied*, 403 U.S. 923 (1971) .........................6

*Linyi Chengen Import & Export Co., Ltd. v. United States*,
   539 F. Supp. 3d 1269 (Ct. Int'l Trade 2021) .......................................................17

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*,
   463 U.S. 29 (1983)...............................................................................................6

*Navneet Publ'ns (India) Ltd. v. United States*,
   999 F. Supp. 2d 1354 (Ct. Int'l Trade 2014) ........................................9, 12, 13, 14

*Pohang Iron and Steel Co., Ltd. v. United States*,
   23 C.I.T. 778 (1999) ...........................................................................................7

*Primesource Bldg. Prods., Inc. v. United States*,
   No. 20-03911, Slip Op. 22-73 (Ct. Int'l Trade June 16, 2022)...........................14, 16

*Qingdao Qihang Tyre Co. v. United States*,
   308 F. Supp. 3d 1329 (Ct. Int'l Trade 2018) .......................................................16

*Rhone Poulenc Inc. v. United States*,
   899 F.2d 1185 (Fed. Cir. 1990).............................................................................9

*Solianus, Inc. v. United States*,
   391 F. Supp. 3d 1331,1339-40 (Ct. Int'l Trade 2019) ......................................11, 14

*Suramerica De Aleaciones Laminadas, et al. v. United States*,
   44 F.3d 978 (Fed. Cir. 1994).................................................................................6

*Thai Pineapple Canning Indus. Corp. v. United States*,
   273 F.2d 1077 (Fed. Cir. 2001).............................................................................9

*Universal Camera Corp. v. NLRB*,
  340 U.S. 474 (1951)................................................................6, 7

*Xiping Opeck Food Co., Ltd. et al. v. United States*,
  551 F. Supp. 3d 1339 (Ct. Int'l Trade Dec. 17, 2021) ............................17

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*,
  783 F. Supp. 2d 1343 (Ct. Int'l Trade 2011) ........................17

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
  716 F.3d 1370 (Fed. Cir. 2013)................................................9, 17, 21

**Statutes**

19 U.S.C. § 1516a(b)(1)(B) ................................................................6

19 U.S.C. § 1673d(c)(5)................................................................8

19 U.S.C. § 1673d(c)(5)(A) ................................................................8

19 U.S.C. § 1673d(c)(5)(B) ................................................................8

19 U.S.C. § 1677e(b)(1)(A) ................................................................4

19 U.S.C. § 1677e(b)(2)................................................................4

19 U.S.C. § 1677f-1(c)(2) ................................................................15, 16

**Other Authorities**

H.R. Doc. No. 103-316 (1994) ................................................................ *passim*

Letter from Peter Koenig & Jeremy Dutra to U.S. Department of Commerce,
  April 2, 2021 ................................................................ 4, 5, 6

Rules of the United States Court of International Trade Rule 56.2 ................................1

S. Rep. No. 103-412 (1994) ................................................................10, 11, 12

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU**

| |
|---|
| KISAAN DIE TECH PRIVATE LTD., *et al* |
| Plaintiff, |
| v. |
| UNITED STATES OF AMERICA, |
| Defendant, |
| and |
| COALITION OF AMERICAN FLANGE PRODUCERS |
| Defendant-Intervenor. |

Consol. Court No. 21-00512

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Plaintiff, Kisaan Die Tech Private Ltd., a producer/exporter covered by, but not individually examined in, the underlying antidumping administrative review conducted by the U.S. Department of Commerce (the "Department" or "Commerce") in *Stainless Steel Flanges from India*, submits this Memorandum of Law in Support of its Motion for Judgment Upon the Agency Record pursuant to Rule 56.2 of the Rules of the United States Court of International Trade (the "Court"). For the reasons set forth below, Plaintiff respectfully requests that the Court grant its Motion for Judgment Upon the Agency Record and remand the Department's *Final Results* in the above-referenced administrative review to the agency for action consistent with this memorandum of law.

**STATEMENT PURSUANT TO RULE 56.2**

**A.      Administrative Determination Under Review**

The administrative determination to be reviewed in this action is the *Final Results* in the 2018-2019 administrative review of the antidumping duty ("AD") order on stainless steel flanges

1

from India. *Stainless Steel Flanges from India: Final Results of Antidumping Duty Administrative Review; 2018-2019,* 86 Fed. Reg. 47,619 (Aug. 26, 2021).

### B.      Statement Of Issues

Whether the Department's decision to apply the dumping margin assigned to a sole mandatory respondent based on total adverse facts available ("AFA") to all other respondents not selected for review through the "all others" rate is supported by substantial evidence and otherwise in accordance with law.

### SUMMARY OF ARGUMENT

When calculating dumping margins across an entire country's export market, it is often necessary for the Department to investigate a handful of so-called "mandatory" respondents, and later determine a rate for the "all other" otherwise cooperative respondents, or those not selected for individual investigation. The goal of this "all others" rate is to reflect the actual dumping margin of the non-selected respondents as accurately as possible. *See* H.R. Doc. No. 103-316, at 873 (1994).

In order to induce cooperation from mandatory respondents, the Department is permitted to make adverse inferences against a respondent who does not cooperate with the agency's investigation or review, and it is also allowed to corroborate these inferences on a reduced evidentiary record, given the lack of data provided by a non-cooperative respondent. Typically, in situations where the dumping margins of the mandatory respondents are based on AFA, *de minimis*, or zero rates, the Department should weight-average the mandatory respondents' dumping margins.

In this case, Commerce (a) only investigated one mandatory respondent, (b) assigned that respondent a dumping margin based on total AFA, and (c) claimed to use the so-called "expected method" to apply this rate to the non-selected respondents through the "all others" rate. Plaintiff

2

respectfully submits that this methodology is not supported by substantial evidence and otherwise not in accordance with law.

First, in situations where a punitive AFA rate is applied to a pool of non-selected respondents who were cooperative, a margin calculated in the "expected" manner cannot accurately reflect the dumping of the non-selected respondents, because the adverse inferences implicit in an AFA rate cannot be transposed onto a cooperating party. In addition, an attempt to apply the highest dumping margin possible by selecting only one mandatory respondent in a "weight-averaging" situation should not be permitted by this court. As a result, if we consider this methodology an application of the "expected" method for calculating an "all others" rate, the rate cannot accurately reflect the dumping of cooperating respondents.  It is, therefore, not supported by substantial evidence and otherwise not in accordance with law.

Second, if the decision to select one mandatory respondent is considered to be a selection rather than a weight-averaging of the mandatory respondent's dumping margin, then the Department needed to provide an explanation for the departure. It did not do so in this case.

Third, there is evidence from the corresponding less-than-fair-value ("LTFV") investigation to set the rate for cooperating, non-selected respondents. Should the Court remand this case to the Department for further review, it should remand this case with a statement that the lower value derived from this evidence is an appropriate reference point for setting the dumping margin for cooperating, non-selected respondents in a future review.

## STATEMENT OF FACTS

On August 16, 2018, the Department published the final determination in its LFTV investigation of stainless steel flanges from India.[1] There, the Department assigned a dumping

---

[1] The period of investigation ("POI") covered July 1, 2016, to June 30, 2017.

margin of 19.16% to Chandan, a cooperating mandatory respondent in the investigation, and a 145.25% margin based on total AFA to the two other mandatory respondents subject to investigation (*i.e.*, Echjay Forgings and a combined entity of Bebitz/Viraj).[2] *Stainless Steel Flanges from India: Final Affirmative Determination of Sales at Less than Fair Value and Final Affirmative Critical Circumstances Determination,* 83 Fed. Reg. 40,746 (Aug. 16, 2018). The Department used the 19.16% margin, the margin assigned to the cooperating Chandan, as the "all others" rate. *Id.* This was the rate applied to the Plaintiff as a result of that proceeding.

On October 9, 2018, following an affirmative determination by the U.S. International Trade Commission, the Department published the AD order on stainless steel flanges from India. *Stainless Steel Flanges from India: Antidumping Duty Order,* 83 Fed. Reg. 50,639 (Oct. 9, 2018).

In the first administrative review of the AD order in 2019, seven Indian producers and exporters of subject merchandise, including Plaintiff, asked the Department to be examined. Public Record ("P.R.") 1-2, 5-8, and 10. Only one, however, was selected by Commerce as a mandatory respondent – Chandan. *Stainless Steel Flanges from India*: Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review; 2018-2019 at 37 (Aug. 20, 2021) ("Final Results Memorandum"); P.R. 169. The remaining cooperative Indian companies, including Plaintiff, later objected to the review of only one company as a mandatory respondent. Letter from Peter Koenig & Jeremy Dutra to U.S. Department of Commerce, April 2, 2021; P.R. 142.

---

[2] Once the Department determines that an investigated party has not cooperated after initial submissions and notifications from the Department that its submissions are deficient, the administering authority may "use an inference that is adverse to the interest of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b)(1)(A). The information used to make this inference may come from the petition, prior final determinations, any previous review, or any other information on the record. 19 U.S.C. § 1677e(b)(2).

On February 24, 2021, the Department published the preliminary results of its first administrative review of the AD order on stainless steel flanges from India.[3] Unlike in the LTFV investigation, Chandan was deemed uncooperative in the first administrative review and assigned a dumping margin of 145.25% based on total AFA. *Stainless Steel Flanges from India: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019,* 86 Fed. Reg. 11,234 (Feb. 24, 2021) ("*Preliminary Results*").

The rate applied to Chandan in the *Preliminary Results* was derived from the AFA rate applied to the non-cooperative mandatory respondents in the LFTV investigation, which in turn was based on transaction-specific dumping margins calculated during the LTFV investigation. Final Results Memorandum at 40; P.R. 169.Chandan's total AFA rate of 145.25% was then applied by the Department to all the other fully cooperative respondents who the agency chose not to review, including Plaintiff, by means of the so-called "all others" rate. *Stainless Steel Flanges from India: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019,* 86 Fed. Reg. 11,234 (Feb. 24, 2021). This rate exceeded the 19.16% rate assigned to the cooperative respondents in the LTFV investigation. *Stainless Steel Flanges from India: Final Affirmative Determination of Sales at Less than Fair Value and Final Affirmative Critical Circumstances Determination,* 83 Fed. Reg. 40,746 (Aug. 16, 2018).

Both Chandan and several of the "all other" companies not selected for individual review, including Plaintiff, requested the Department to conduct a hearing. Final Results Memorandum at 2. P.R. 169; *e.g.* P.R. 135. Many of these same companies also submitted case and rebuttal briefs to the Department. *See, e.g.,* Letter from Peter Koenig & Jeremy Dutra to U.S. Department of Commerce, April 2, 2021; P.R. 142.

---

[3] The period of review ("POR") for the first administrative review covered entries from March 28, 2018 to September 30, 2019.

On August 26, 2021, notwithstanding the objections of Plaintiff and other (cooperative) Indian respondents, the Department published the *Final Results* of its first administrative review of the AD order on stainless steel flanges from India. *Stainless Steel Flanges from India: Final Results of Antidumping Duty Administrative Review; 2018-2019,* 86 Fed. Reg. 47,619 (Aug. 26, 2021). In its final results the agency continued to slap Chandan with a total AFA rate of 145.25% <u>and</u> applied that rate, without adjustment, to the Plaintiff and the other Indian respondents who asked to be included in the review and at all times remained fully cooperative with the Department. *See* Letter from Peter Koenig & Jeremy Dutra to U.S. Department of Commerce, April 2, 2021; P.R. 142.

## <u>STANDARD OF REVIEW</u>

The Court will *not* uphold the Department's determination in a proceeding involving antidumping duties if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). This standard and its interpretation by the courts are well-known. On questions of law, the Court must consider whether the Department's interpretation of the statute is reasonable in light of the overall statutory scheme. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-843 (1984). If, however, the statute is silent or ambiguous, the Court will uphold the Department's interpretation, provided that the interpretation is reasonable in light of the overall statutory scheme. *Id.*

On questions of fact, the Court must determine whether the Department's determination is supported by substantial evidence on the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Suramerica De Aleaciones Laminadas, et al. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994), *quoting Consolidated Edison Co, v. NLRB*, 305 U.S. 197, 229 (1938). The Court must be "assure{d} that the agency has given reasoned consideration to all the material facts and issues"

6

and that the Department has provided a reasoned basis for the legal conclusions it draws from the facts in the record. *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970), *cert. denied*, 403 U.S. 923 (1971); *see also Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). Accordingly, the Court cannot evaluate the substantiality of the evidence supporting the Department's determination "merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-488 (1951). Rather, it "must take into account whatever in the record fairly detracts from its weight." *Id.*

Moreover, the process by which the agency reaches its determination must be logical and rational. *Allentown Mack Sales & Sew., Inc. v. NLRB*, 522 U.S. 359, 374 (1998). The courts, therefore, will vacate as arbitrary and capricious "decisions that depart from established precedent without a reasoned explanation." *Pohang Iron and Steel Co., Ltd. v. United States*, 23 C.I.T. 778, 788-789 (1999), *quoting Graphic Commc'n Int'l Union, Local 554 v. Salem-Gravure Div. of World Color Press, Inc.*, 843 F.2d 1490, 1493 (D.C. Cir. 1988).

## ARGUMENT

### I.   INTRODUCTION

This challenge focuses on the Department's decision to apply a dumping margin assigned to the only mandatory respondent in an administrative review of an AD order, based completely on AFA, to all other respondents (a) who asked to be reviewed, (b) who were cooperative with the agency at all times, and (c) through no fault of their own were not chosen for individual review. Put simply, the decision to select only one mandatory respondent does not produce enough evidence to support an "all others" rate covering 44 other respondents. In addition, to base this "all others" rate on a margin determined solely on AFA, needlessly punishes

respondents not chosen for review that could well have cooperated if given the opportunity. This decision to apply a punitive rate to all other Indian producers and exporters of stainless steel flanges to the United States, including Plaintiff, is not supported by substantial evidence and not in accordance with law.

Section II will demonstrate that applying the "expected method" in calculating the "all others" rate under these circumstances goes against the intent of the all others rate, and is not based on substantial evidence on the record. Section III will demonstrate that the application of a single AFA rate to an entire industry is not an application of the "expected method" of calculating the "all others" rate at all, and Commerce needed to provide more information to show that the "expected method" was reasonably representative of the dumping margin of the non-selected respondents. Section IV discusses a more reasonable alternative for the "all others" rate in this case, which this Court may want to provide to Commerce as a guide for further consideration on remand.

## II.   APPLYING THE EXPECTED METHOD FOR CALCULATING THE "ALL OTHERS" RATE IS NOT REASONABLE

When calculating the "all others" rate in an antidumping proceeding, the Department relies on section 735(c)(5) of the Tariff Act of 1930. 19 U.S.C. § 1673d(c)(5). Typically, the Department calculates the "all others" rate by weight-averaging the dumping margins of the individually examined parties (*i.e.*, the so-called "mandatory respondents"). 19 U.S.C. § 1673d(c)(5)(A). The statute explicitly excludes zero margins, *de minimis* margins, and margins calculated based on AFA from this calculation. *Id.* If the individually examined respondents' rates are based entirely on those criteria, the statute allows for a calculation based on "any other reasonable method." 19 U.S.C. § 1673d(c)(5)(B). However, the Statement of Administrative Action ("SAA") that accompanied the passage of the statute provides an "expected method" for

calculations made under 19 U.S.C. § 1673d(c)(5)(B). H.R. Doc. No. 103-316, at 873 (1994).

This method urges the Department to weight-average the zero margins, *de minimis* margins, and

margins based on AFA, as long as volume data is available. *Id.* at 873. However, if that

calculation is not feasible or would result in a determination that would "not be reasonably

reflective of potential dumping margins for the non-investigated producers, Commerce may use

any other reasonable method." *Id.* at 873.

 The "expected method" is intended to be the primary calculation method for all other

rates in both investigations and administrative reviews. *Albemarle Corp. & Subsidiaries v.

United States,* 821 F.3d 1345, 1352-53 (Fed. Cir. 2016) ("*Albemarle*"). However, as stated

above, the SAA explicitly allows departure from the expected method when the factual record

does not support its application. Indeed, even if a particular method is permitted by a statute or

its expected interpretation, "it is possible for the application of a particular methodology to be

unreasonable in a given case." *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d

1370, 1378 (Fed. Cir. 2013) ("*Bestpak*") (citing *Thai Pineapple Canning Indus. Corp. v. United

States,* 273 F.2d 1077, 1085 (Fed. Cir. 2001)). The "overriding purpose" of Commerce's

antidumping margin calculations is to be as "accurate as possible." *Id.* at 1379 (citing *Rhone

Poulenc Inc. v. United States,* 899 F.2d 1185, 1191 (Fed. Cir. 1990)). Therefore, even if the

method for calculating the dumping margin is the expected one, if the expected method cannot

be "reasonably reflective" of the dumping margins of non-investigated parties, accuracy should

triumph over expectation, and another method should be used. SAA at 873; *see Navneet Publ'ns

(India) Ltd. v. United States,* 999 F. Supp. 2d 1354, 1358 (Ct. Int'l Trade 2014) ("*Navneet*").

 Though Commerce attempted in its Final Results Memorandum to distinguish the

opinions in *Bestpak* and *Navneet* from the current situation by focusing on the specific reasons

why the courts in those cases found the application of the expected method to be unreasonable, we are not arguing that the situation presented in the instant case is unreasonable for the same reasons, or that the expected method itself should not be the primary method for calculating the "all others" rate. *See* Final Results Memorandum at 40, 44; P.R. 169. Instead, we are suggesting that applying the AFA rate to otherwise cooperative non-selected respondents is unreasonable for two different reasons. First, applying solely an AFA rate to parties that would have cooperated if given the opportunity is needlessly punitive. Second, choosing one non-cooperative mandatory respondent is not reasonably representative of the non-selected respondents. As a result, the Department should abandon the expected method and choose a different dumping margin for the "all others" rate in the first administrative review of the AD order on stainless steel flanges from India.

A.      Dumping Margins Based On AFA Are Based On A Limited, Punitive Record, And May Not Be Representative Of The Experience Of Other Respondents

Based on the limited circumstances under which Commerce can apply an AFA rate, one can observe that Congress and the Executive Branch considered the AFA rate to be at best a substitute only when parties fail to provide enough information to comply with Commerce's investigatory requests, and at worst, a punitive measure meant to hurt parties that willfully ignore Commerce's demands. The final Congressional report accompanying the Uruguay Round Agreements Act ("URAA") permits Commerce to use rates based on facts available only if "(1) necessary information is not available on the record; or (2) an interested party withhold{s} requested information; fails to provide information within the established deadlines or in the manner requested…; significantly impedes an antidumping or countervailing duty proceedings; or provides information that cannot be verified." S. Rep. No. 103-412 (1994) at 86. The SAA that accompanied the passage of the URAA also supports the notion that AD determinations

based on facts available may only be used "if an interested party does not provide necessary information or significantly impedes an investigation." SAA at 869. The SAA states that the AFA rate is the functional equivalent and *de facto* replacement of Commerce's "best information available" investigative standard, which the SAA views as "the only incentive to foreign exporters and producers to respond to Commerce's questionnaires." SAA at 868, 869-70. On top of this, both the Senate Report and the SAA allow Commerce to make negative inferences from secondary sources against a non-cooperative party. S. Rep. No. 103-412 (1994) at 86-87; SAA at 870.

The statute permits Commerce to use the AFA rate in limited situations in part because of the reduced evidentiary burden on Commerce to corroborate an AFA rate. Instead of relying on data provided by the investigated entity, Commerce may use secondary information, like the petition from the adverse party that started the investigation, the final determination from the subject merchandise, or any prior review of the subject merchandise to corroborate an AFA rate. S. Rep. No. 103-412 (1994) at 87. In addition, Commerce only needs to corroborate that information "to the extent practicable," which the "Committee intends only that Commerce… must satisfy itself that that the information has probative value." *Id.*; SAA at 870. The SAA explicitly notes that this secondary information is imperfect, saying "neither Commerce nor the Commission must prove that the facts available are the best alternative information. Rather, the facts available are information or inferences which are reasonable to use under the circumstances." SAA at 869. Since this reduced evidentiary standard is applicable only in limited circumstances, it follows that AFA is intended to be coercive and necessarily based on something other than the best facts available, in order to induce investigated companies to cooperate and avoid being subjected to a dumping margin based on imperfect evidence.

In highlighting that AFA rates are based on a more limited factual record than a review where the mandatory respondent cooperates fully and can provide information on export activity, we do not argue that AFA rates should never be used to calculate "all others" rates under the expected method. Indeed, the SAA explicitly includes AFA rates in the expected method, and does not prioritize one rate over another. SAA at 873; Final Results Memorandum at 39; P.R. 169. However, it is notable that the jurisprudence Commerce relies on in its Final Results Memorandum to defend the legality of using AFA rates pursuant to the expected method turns on having multiple rates to weight-average in the calculation. In both *Bosun III* and *Solianus*, the cases that Commerce relies on to defend the use of AFA rates in the "expected method," this Court upheld "all others" rates based on the expected method, but both still weight-averaged AFA rates with other rates, and in both cases, *de minimis* and zero rates. *Bosun Tools Co., Ltd. v. United States,* 493 F. Supp. 3d 1351, 1356-57 (Ct. Int'l Trade 2021); *Solianus, Inc. v. United States,* 391 F. Supp. 3d 1331,1339-40 (Ct. Int'l Trade 2019). The Court of Appeals for the Federal Circuit ("CAFC") recently upheld the decision in *Bosun III,* saying that the SAA allows the Department to consider AFA rates in calculating an "all others" rate. *Bosun Tools Co., Ltd. v. United States*, No. 21-1929, 2022 WL 94172 (Fed. Cir. Jan. 10, 2022). In addition, *Albemarle*, another case that Commerce repeatedly cites in support of its *Final Results*, calculates the "all others" rate under the expected method solely using zero and *de minimis* dumping margins. *Albemarle Corp. & Subsidiaries v. United States,* 821 F.3d 1345, 1353-54 (Fed. Cir. 2016). The use of *de minimis* and zero rates is important, since both the SAA and Senate Reports indicate that those rates are the result of investigation into respondent data and a determination that the dumping margins are minimal, rather than supposition extrapolated from secondary information. *See* S. Rep. No. 103-412 (1994) at 38; SAA at 844-45. This implies that there was more

12

information on the record in all of these cases supporting the "all others" rates than there would be if the Department had simply based its determination on a single AFA rate.

As a result, this Court should exercise caution when reviewing "all others" rates based on the expected method if AFA rates are involved, to make sure that there is enough information on the record to "reasonably reflect" the dumping margins, if any, of the non-examined (otherwise cooperative) parties. This Court has previously taken care to make sure an AFA rate applied to a mandatory respondent matches "economic reality" of non-investigated parties in *Navneet*. *Navneet Publ'ns (India) Ltd. v. United States*, 999 F. Supp. 2d 1354, 1363 (Ct. Int'l Trade 2014). In that case the Court found that an "all others" rate based in part on an AFA rate was not based on substantial evidence because the AFA rate selected "was… purposely selected with adversity in mind," and Commerce could not otherwise verify the representativeness of the chosen rate to the non-investigated respondents. *Id.* at 1364; *see also Amanda Foods (Vietnam) Ltd. v. United States*, 647 F. Supp. 2d 1368, 1381 (Ct. Int'l Trade 2009) ("there is no basis in the {antidumping} statute for penalizing cooperative uninvestigated respondents due solely to the presence of non-cooperative uninvestigated respondents."). Though the all others rate at issue in *Navneet* did not use the "expected method," it still is illustrative and demonstrates that this Court still needs to find an "all others" rate that reflects actual dumping by non-investigated parties, and how AFA rates can be distortive. Indeed, the CAFC recently took care in *Bosun III* to demonstrate that the "all others rate" applied to Bosun was reasonable based on historical data from six previous administrative reviews. *Bosun Tools Co., Ltd. v. United States*, No. 21-1929, 2022 WL 94172, at *12 (Fed. Cir. Jan. 10, 2022). The CAFC came to a similar conclusion as the one in *Navneet* when Commerce applied "any reasonable method" of calculating the "all others" rate by averaging a *de minimis* and an AFA rate in *Changzhou Wujin*. *Changzhou Wujin Fine*

*Chem. Factory Co., Ltd. v. United States,* 701 F.3d 1367, 1375-76 (Fed. Cir. 2012). After looking at the legislative history of the AFA rate, the court in that case concluded that "applying an adverse rate to cooperating respondents undercuts the cooperation-promoting goal of the AFA statute," noting that even though the AFA rate was averaged with a *de minimis* rate, it could not accurately reflect the position of the cooperating non-respondents. *Id.* at 1378. Finally, this Court reaffirmed this point in *Baroque Timber*, when it overturned an "all others" rate calculated by averaging a *de minimis* rate and an AFA rate because "Commerce failed to make any connection between the transaction specific margin {used in the AFA rate}… and separate rate respondents' pricing practices." *Baroque Timber Indus. (Zhongshan) Co. v. United States,* 971 F. Supp. 2d 1333, 1343 (Ct. Int'l Trade 2014). The overriding theme remains: that the "all others" rate must "bear a reasonable relationship" to the non-selected respondents' actual business practices. *Changzhou Wujin,* 701 F.3d at 1379.

That said, using AFA rates in calculating an "all others" rate are not "*per se* unreasonable." *Baroque Timber,* 971 F. Supp. 2d at 1341. Indeed, an "all others" rate based entirely on AFA could well be representative of a larger pool of respondents in certain situations, like if there is evidence on the record of widespread non-cooperation by the respondents. For example, in *Primesource Building Products*, Commerce sent questionnaires to three different mandatory respondents: one did not respond to the questionnaire, another affirmatively stated it would not cooperate with the questionnaire, and the third did not have reviewable sales during the Period of Review. *Primesource Bldg. Prods., Inc. v. United States,* No. 20-03911, Slip Op. 22-73 at 5 (Ct. Int'l Trade June 16, 2022). Another non-selected respondent asked to participate, but ultimately did not submit a questionnaire. *Id.* at 6. Finally, prior administrative reviews of the antidumping order at issue imposed AFA rates on several mandatory respondents, along with a

14

"lack of consistently 'low' rates." *Id.* at 20. With a robust history of AFA rates imposed in that case, and non-cooperation across multiple mandatory respondents, including one non-selected respondent that attempted to cooperate and did not, the Court was arguably justified in upholding a weighted-average of two AFA rates in that case. *Id.* at 21. In sum, the record must still be carefully examined in order to ensure that the "all others" rate is reasonably reflective of actual dumping margins of the non-examined parties, as the Court did in *Primesource Building Products*.

Here, the record evidence we have on the mandatory respondent for the relevant period of review is too thin to reflect the dumping margin of the non-investigated parties. Commerce attempted to corroborate Chandan's margin by looking at data Chandan provided in the LTFV investigation. Commerce took some of Chandan's transaction-specific margins, "selected with adversity in mind," in that investigation to corroborate an AFA rate for a different, non-cooperative respondent. Final Results Memorandum at 43; P.R. 169; *Navneet Publ'ns Inc.,* 999 F. Supp. 2d. at 1363. Much like the situation in *Baroque Timber*, Commerce made no attempt to corroborate that Chandan's transaction-specific margins from that investigation were in any way related to the pricing practices of non-selected respondents in this administrative review. Unlike the all others rates in *Bosun* and *Solianus*, the instant administrative review does not feature a fulsome investigation into the zero and *de minimis* margins based on data covering the actual period of review to balance out a rate based on AFA; moreover, there is no historical data from previous administrative reviews to show that the "all others" rate reasonably reflects historic dumping activity. In addition, while Commerce referenced the LTFV investigation to show that the lack of cooperation among two respondents there could be proof of non-cooperation in this instance, Final Results Memorandum at 43; P.R. 169, there is no clear evidence of overwhelming

non-cooperation on the current record to show that an AFA rate could reasonably reflect non-selected respondents that could have cooperated if given the opportunity. Instead of seeing multiple non-cooperative mandatory and non-selected respondents with a long history of high dumping margins, as was the case in *Primesource Building Materials*, the Department faced only one mandatory respondent, Chandan, and limited evidence of dumping, as this is the first administrative review. Indeed, Chandan's own experience shows an inconsistent record of cooperation and non-cooperation, since it previously cooperated in the LTFV investigation that led to this Order. *Id.* at 43. Commerce itself mentioned that 42 of the 44 non-examined companies had never been investigated at any point in this proceeding, and there is no way of knowing how widespread non-cooperation is among them from the record. *Id.* at 43. Given Chandan's inconsistent cooperation between the LTFV investigation and the subject administrative review, and the dearth of contemporaneous data to apply to the non-investigated respondents in the subject review, applying one respondent's rate based solely (or entirely) on AFA to dozens of non-examined respondents, including the Plaintiff, cannot be based on substantial evidence.

### B. Selective Sampling Of One Mandatory Respondent May Not Be Representative Of A Larger Pool

Commerce is permitted to selectively investigate only a portion of the cooperative respondents in an administrative review in order to make such reviews administratively feasible. 19 U.S.C. § 1677f-1(c)(2). Such a "sample of exporters and producers" must be "statistically valid" or account for the "largest volume of subject merchandise from the exporting country." *Id.* Though a sample based on the largest volume of exporters is presumed to be representative unless proven otherwise, the agency is not obligated to use them in these calculations, and the presumption may be overcome if there is substantial evidence that the non-selected respondents'

dumping is different. *Albemarle Corp. & Subsidiaries v. United States,* 821 F.3d 1345, 1353 (Fed. Cir. 2016); *Changzhou Hawd Flooring Co. v. United States,* 848 F.3d 1006, 1012 (Fed. Cir. 2017).

It is notable that the statutory language uses the plural of "exporters and producers" when discussing sampling, seemingly contemplating that the pool of selected mandatory respondents will involve more than one individually investigated party. 19 U.S.C. § 1677f-1(c)(2). Indeed, Commerce cites to *Albemarle* to illustrate the policy position that the statute assumes that a sample based on the largest volume of exporters is representative of the non-examined parties, but the quotation Commerce relies upon still describes the mandatory respondents as "exporters," once again implying that the statute envisions more than one mandatory respondent can represent an entire industry. Final Results Memorandum at 42; P.R. 169. In addition, this Court recently reiterated that the largest exporters are presumed to be representative of non-selected respondents in *Primesource Building Products* when it said the "largest *exporters* by volume are assumed to be representative of the non-selected respondents." *Primesource Bldg. Prods., Inc. v. United States, ,* No. 20-03911, Slip Op. 22-73 at 14 (Ct. Int'l Trade June 16, 2022) (emphasis added). This emphasis on the selection of multiple large exporters of subject merchandise is likely done to avoid scenarios where a single exporter that may well represent a majority of the exports, but, due to unique circumstances, is not a valid comparison point to the other non-examined parties in the industry and lead to a non-representative "all others" rate. Weight-averaging the dumping margins of multiple mandatory respondents, or a fulsome record that demonstrates that the sole mandatory respondent accurately represents the non-investigated parties in the proceeding would avoid this problem.

In addition, the case upon which Commerce heavily relies to support its decision to restrict the pool of mandatory respondents (*i.e., Qingdao Qihang Tyre Co. v. United States*) still examined two mandatory respondents to represent a "substantial portion of the subject exports," and assigned an "all others" rate based on a weighted-average dumping margin of those mandatory respondents. *See Qingdao Qihang Tyre Co. v. United States,* 308 F. Supp. 3d 1329, 1333-34 (Ct. Int'l Trade 2018) ("*Quihang Tyre*"). Even with this in mind, other cases have looked less favorably on Commerce's selection of just two mandatory respondents, as well. The prior stage of the *Bestpak* litigation is a good example. While noting that Commerce was within its right to select mandatory respondents based on the largest exporters by volume, this Court chided the Department for doing so, stating: "Commerce put itself in a precarious situation when it selected only two mandatory respondents." *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,* 783 F. Supp. 2d 1343, n.4 (Ct. Int'l Trade 2011). Citing this point, this Court reiterated its discomfort with the agency selecting only two mandatory respondents in *Linyi*, writing: "Commerce created its own problems when it selected only two mandatory respondents, which resulted in sparse information on the record to support its assertions regarding the potential dumping margins of the separate rate respondents."  *Linyi Chengen Import & Export Co., Ltd. v. United States,* 539 F. Supp. 3d 1269, 1277 (Ct. Int'l Trade 2021). Finally, in *Xiping Opeck Food Co.*, this Court recently stated that if the Department "were to change its method and name more than two mandatory respondents, separate rate companies would receive more accurate rates." *Xiping Opeck Food Co., Ltd. et al. v. United States,* 551 F. Supp. 3d 1339, 1357 (Ct. Int'l Trade Dec. 17, 2021). As previously discussed, the goal of an "all others" rate is to be "reasonably reflective" of the dumping activity of the non-selected respondents, and choosing as few as two mandatory respondents may artificially limit the data available to the Department so

much that the "all others" rate is not reasonably reflective of actual dumping practices of the non-selected respondents. In short, the Court should carefully consider investigations with few mandatory respondents, particularly in situations where the mandatory respondents selected have characteristics that do not apply to the non-selected respondents.

Given the unease surrounding situations where Commerce selected two mandatory respondents due to a lack of representative data, it is hard to imagine that this Court would support a situation where Commerce selects only one mandatory respondent, particularly when that respondent's rate is calculated based on AFA and, therefore, may not represent the wider non-selected respondent pool absent indicia of industry-wide lack of cooperation in the investigation. This Court declined to do just that recently in *Godaco*, which involved a sole mandatory respondent given an AFA rate. *Godaco Seafood Joint Stock Co. v. United States,* 494 F. Supp. 3d 1294, 1303 (Ct. Int'l Trade 2021) ("*Godaco II*").

We do not contest that the mandatory respondent, Chandan, was the largest exporter by volume during the period of this administrative review, and that Chandan's total exports represent a significant volume of exports of subject merchandise during the period of review. Final Results Memorandum at 38; P.R. 169. In addition, we do not contest that Commerce is not obligated to examine all of the respondents in any given investigation or administrative review. Final Results Memorandum at 41; P.R. 169. However, the contested review presents precisely the sort of selective sampling issue that could lead to non-representativeness when it comes to assigning an "all others" rate. As explained previously, there is little, if any, information on the current record to show that Chandan's AFA rate is based on any actual dumping margin during the period of review, and, since many of the non-selected respondents have never been investigated at any point in this proceeding, it is impossible to say whether Chandan can

adequately represent them. Final Results Memorandum at 43; P.R. 169. In fact, it seems unlikely

that the requisite representativeness exists, given that the non-selected respondents have been

cooperative and Chandan (according to Commerce) has not. This selective sampling should not

be based on such a slim record and applied to a group of companies, including Plaintiff, in a

different cooperative stance *vis-a-vis* the Department.

## III.  BASING THE ALL OTHERS RATE ON ONE RATE CALCULATED FROM FACTS AVAILABLE IS NOT AN APPLICATION OF THE EXPECTED METHOD

As explained above, when calculating an "all others" rate based exclusively on AFA

margins, zero margins, or *de minimis* margins, Commerce is permitted to depart from the

expected method of weight-averaging the provided margins. SAA at 873. However, when it

departs from the expected method, Commerce must "reasonably conclude{s} that the expected

method is 'not feasible' or 'would not be reasonably reflective of potential dumping margins.'"

*Albemarle Corp. & Subsidiaries v. United States,* 821 F.3d 1345, 1352 (Fed. Cir. 2016).

### A.  *Godaco Seafood v. United States* Shows That Using A Sole AFA Rate Is A Departure From The Expected Method.

Last year this Court dealt with a very similar situation to the one in the instant case. In

*Godaco II,* Commerce examined only one mandatory respondent, Godaco, and assigned an AFA

rate to that company. *Godaco Seafood Joint Stock Co. v. United States,* 494 F. Supp. 3d 1294,

1304 (Ct. Int'l Trade 2021). Commerce used this AFA rate as the "all others" rate, stating that it

applied both the expected method and "any other reasonable method" in its decision

memorandum. *Id.* at 1304. In its decision, this Court held that in applying Godaco's AFA rate to

the non-examined respondents, Commerce did not apply the expected method because

"Commerce did not weight-average the zero and de minimis margins and margins determined

pursuant to the facts available, but Commerce instead applied the 'any reasonable method'

approach by using the one rate determined pursuant to AFA." *Id.* at 1305. Once it declined to use the expected method, Commerce had an obligation to explain why the expected method would not reflect the dumping margin, and it did not do so, instead stressing that the relevant statutes did not prohibit the use of an AFA rate in calculating the "all others" rate, that the AFA rate was contemporaneous to the "all others" plaintiffs since it came from the same administrative review, and that the AFA rate was the sole rate applied to individually examined respondents during the administrative review. *Id.* at 1305-06.

Though Commerce does not explicitly state that it was applying "any other reasonable method" in the current proceeding, the lack of weight-averaging should still hold here, since it reinforces many of the conclusions presented earlier in this memorandum. An "all others" rate based on a sole mandatory respondent's AFA rate cannot be representative of a country with many exporters in the same industry, since the AFA rate is intended to be punitive and based on limited information, and one mandatory respondent is unlikely to capture the nuances of an entire export industry in such a scenario. Weight-averaging with other rates reduces these sampling and lack of information concerns, since a larger pool of respondents would be covered, and ensures that the "all others" rate can reasonably reflect the dumping margin of the non-examined respondents.

If we assume that the "any other reasonable method" rate applies, Commerce's Final Results Memorandum in the instant proceeding hews closely to the agency memorandum described in *Godaco*. It stresses the alleged legality of using an AFA rate in calculating the "all others" rate through the expected method, that Chandan is representative of the non-selected respondents both at the prior investigation stage and now, and that it is the only margin provided from this investigation. Final Results Memorandum at 47; P.R. 169; *Godaco Seafood Joint Stock*

*Co. v. United States,* 494 F. Supp. 3d 1294, 1306 (Ct. Int'l Trade 2021). The similarities between the memoranda are notable, and since Commerce failed to explain how the expected rate was not reasonably representative of the non-selected respondents under extremely similar circumstances in *Godaco II*, it should fail (again) here.

## IV.   THE "ALL OTHERS" RATE FROM THE PRIOR LTFV INVESTIGATION IS A MORE ACCURATE "ALL OTHERS" RATE TO USE IN THIS REVIEW

As previously established, Commerce has not demonstrated that the method for calculating the "all others" rate for non-selected respondents is based on any reasonable estimate of the dumping margins of non-examined entities. Though the non-selected respondents have no obligation to provide superior record evidence when Commerce fails to meet its burden, *Godaco Seafood Joint Stock Co. v. United States,* 494 F. Supp. 3d 1294, 1306 (Ct. Int'l Trade 2021), we will demonstrate a superior method of calculating the "all others" rate from this proceeding, which this Court may want to use to guide the Department as it hopefully recalculates the "all others" rate on remand.

### A.   There Is Evidence Of Cooperating Respondents On This Record From Previous Investigations That Is More Reflective Of The Current Review

Since this is the first administrative review of the investigation, there is limited historical or contemporaneous data on which to base any dumping margin for the non-investigated respondents. However, this should not be an invitation to uphold the unreasonable AFA rate as calculated by Commerce. The Department cannot select too few representative mandatory respondents this early in the administrative process and then "invoke{e} procedural difficulties that were at least in part a creature of its own making." *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370, 1378 (Fed. Cir. 2013). In sum, Commerce brought this problem on itself.

Under these circumstances, the Court should remand the final results of the first administrative review back to Commerce, much like it did in *Godaco II. See Godaco Seafood Joint Stock Co. v. United States,* 494 F. Supp. 3d 1294, 1306 (Ct. Int'l Trade 2021). In addition, much like in *Godaco II*, there is some evidence on this record that might well be more reflective of the non-selected respondents' dumping margins. In the 2016-2017 investigation, Commerce found that the "all others" rate for non-selected respondents was 19.16% based on one cooperating respondent, which was Chandan in that particular investigation. *Stainless Steel Flanges from India: Final Affirmative Determination of Sales at Less than Fair Value and Final Affirmative Critical Circumstances Determination,* 83 Fed. Reg. 40,746 (Aug. 16, 2018). Given the existence of a cooperative respondent, there is some evidence on the record that this rate is closer to accurate for cooperative, non-selected respondents. In addition, by identifying this rate, this Court could send a signal on remand that Commerce's rate should be closer to that rate, rather than the artificially inflated one presented here. This Court sent such a signal in *Godaco* when it remanded the "all others" rate based on a sole AFA margin, *Godaco Seafood Joint Stock Co. v. United States,* 494 F. Supp. 3d 1294, 1306 (Ct. Int'l Trade 2021), and when Commerce recalculated the "all others" margin based on rates from prior administrative reviews of cooperating respondents, the final rate was ultimately close to the rate that the Court suggested on remand and upheld in a subsequent review. *Godaco Seafood Joint Stock Co. v. United States,* 539 F. Supp. 3d 1286, 1290-91 (Ct. Int'l Trade 2021). This Court can send this message again, and it should, in order to ensure a rate that reasonably reflects the non-selected respondents' dumping margins as mandated by law is used.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court find that the Department's *Final Results* are not supported by substantial evidence on the record or otherwise

not accordance with law, and remand the *Final Results* to the Department for reconsideration consistent with the opinion of this Court.

Respectfully submitted,

Duane W. Layton

MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 263-3000
dlayton@mayerbrown.com

*Counsel to Kisaan Die Tech Private Ltd.*

Dated: June 30, 2022

24

## CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURES 2(B)(1)

The undersigned hereby certifies that the foregoing brief contains 7,134 words, exclusive of the corporate disclosure statement, table of contents, table of authorities, glossary of case-specific acronyms and abbreviations, and certificates of counsel, and therefore complies with the maximum 14,000 word count limitation as set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

Duane W. Layton

MAYER BROWN LLP

*Counsel to Kisaan Die Tech Private Ltd.*