## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE TIMOTHY C. STANCEU

| | |
|---|---|
| KISAAN DIE TECH PRIVATE LTD., *et al.* | |
|        Plaintiffs, | |
|    v. | Consol. Court No. 21-00512 |
| UNITED STATES OF AMERICA, | |
|        Defendant, | |
|   and | |
| COALITION OF AMERICAN FLANGES PRODUCERS | |
|        Defendant-Intervenor. | |

## REPLY OF PLAINTIFF KISAAN DIE TECH PRIVATE LTD. TO RESPONSE OF DEFENDANT

Duane W. Layton
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C.  20006
Tel: (202) 263-3000

*Counsel to Kisaan Die Tech Private Ltd.*

Dated: January 17, 2023

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ........................................................................................ 1

    A.   Statement Of The Law .................................................................... 1

    B.   Statement Of The Facts .................................................................. 3

    C.   The *Final Results* Are Not Based On Substantial Evidence And Are Not In Accordance With Law ................................................... 4

II.  ARGUMENT ............................................................................................ 6

    A.   The Department Did Not Apply The Expected Method To The Calculation Of The All Others Rate In The Challenged Review ................................................. 6

    B.   The All Others Rate In The Challenged Review Is Not Reasonably Reflective Of The Potential Dumping Margins Of The Plaintiff And The Other Non-investigated Respondents ................................................. 9

        1.   Contrary to the government's assertion, the Department must consider the economic reality of the non-selected respondents when calculating the all others rate ................................................. 9

        2.   There is no evidence on the record that the all others rate assigned to the Plaintiff accurately represents the economic reality of the non-selected respondents ................................................. 11

        3.   The prior LTFV investigation demonstrates that the challenged all others rate was wrongfully decided ................................................. 14

        4.   Exhaustion of administrative remedies is not relevant in the instant case, as the Plaintiff is not contesting the selection of the mandatory respondents ................................................. 16

III. CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albemarle Corp. & Subsidiaries v. United States,*
821 F.3d 1345 (Fed. Cir. 2016) ................................................................. *passim*

*Amanda Foods Vietnam Ltd. v. United States,*
807 F. Supp. 2d 1332 (Ct. Int'l Trade 2011) ............................................. 17

*Asahi Seiko Co. Ltd. v. United States,*
755 F. Supp. 2d 1316 (Ct. Int'l Trade 2011) ............................................. 17

*Changzhou Wujin Fine Chemical Factory Co., Ltd. v. United States,*
701 F.3d 1367 (Fed. Cir. 2012) ................................................................. 1, 2

*DuPont Teijin Fims China Ltd. v. United States,*
7 F. Supp. 3d 1338 (Ct. Int'l Trade 2014) ................................................. 17

*Godaco Seafood Joint Stock Co. v. United States,*
494 F. Supp. 3d 1294 (Ct. Int'l Trade 2021) ............................................. 7

*Lasko Metal Prods., Inc. v. United States,*
43 F.3d 1442 (Fed. Cir. 1994) ................................................................... 2

*Linyi Chengen Import & Export Co., Ltd. v. United States,*
No. 18-00002, Slip Op. 22 (Ct. Int'l Trade Dec. 21, 2022) ....................... 8, 14

*Navneet Publ'ns (India) Ltd. v. U.S.,*
999 F. Supp. 2d 1354 (Ct. Int'l Trade 2014) ............................................. 9, 10, 11, 12

*PrimeSource Bldg. Prod., Inc. v. United States,*
581 F. Supp. 3d 1331 (Ct. Int'l Trade 2022) ............................................. *passim*

*Quingdao Quihang Tyre Co. v. United States,*
308 F. Supp. 3d 1329 (Ct. Int'l Trade 2018) ............................................. 12, 13

*Rhone Poulenc Inc. v. United States,*
899 F.2d 1185 (Fed. Cir. 1990) ................................................................. *passim*

*Schaeffler Italia S.R.L. v. United States,*
781 F. Supp. 2d 1358 (Ct. Int'l. Trade 2011) ............................................ 17

*Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States,*
268 F.3d 1376 (Fed. Cir. 2001) ................................................................. 2

*SKF USA v. United States*,
  675 F. Supp. 2d 1264 (Ct. Int'l Trade, 2009) ............................................................1

*Thai Pineapple Canning Indus. Corp. v. United States*,
  273 F.2d 1077 (Fed. Cir. 2001)...........................................................................12

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
  716 F.3d 1370 (Fed. Cir. 2013)........................................................................ *passim*

*YC Rubber Co. (North America) LLC v. United States*,
  No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022) ........................................12, 13

STATUTES

19 U.S.C. § 1673d(c)(5)(A) ..................................................................................2

19 U.S.C. § 1673d(c)(5)(B) ................................................................................2, 3

19 U.S.C. § 1677e ............................................................................................10

19 U.S.C. § 1677e(b) ..........................................................................................1

19 U.S.C. § 1677e(b)(1)....................................................................................1, 10

19 U.S.C. § 1677e(d)(3)...................................................................................12, 15

19 U.S.C. § 1677e(d)(3)(B) .................................................................................10

19 U.S.C. § 1677f-1(c)(2) .....................................................................................2

OTHER AUTHORITIES

Letter from Peter Koenig & Jeremy Dutra to U.S. Department of Commerce
  (Apr. 2, 2021).............................................................................................18

Respondent Selection Memorandum (Mar. 13, 2020)……………………………………………………..…3

*Stainless Steel Flanges from India: Final Affirmative Determination of Sales at Less than
  Fair Value and Final Affirmative Critical Circumstances Determination*,
  83 Fed. Reg. 40,746 (Aug. 16, 2018)................................................................13, 14, 15, 18

*Stainless Steel Flanges from India: Final Results of Antidumping Duty Administrative Review*;
  2018-2019, 86 Fed. Reg. 47,619 (Aug. 26, 2021) ....................................................................4

*Stainless Steel Flanges from India*: Issues and Decision Memorandum for the Final
  Results of the Antidumping Duty Administrative Review; 2018-2019 at 38
  (Aug. 20, 2021) ...................................................................................... *passim*

*Stainless Steel Flanges From India: Notice of Court Decision Not in Harmony With the Final Determination of Antidumping Investigation; Notice of Amended Final Determination,* 86 Fed. Reg. 50,325 (Sept. 8, 2021) ........................................................................13

Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040.............................1, 3, 6, 11

**LITIGATION DOCUMENTS**

Complaint..................................................................................................................................17

Def. Br............................................................................................................................. *passim*

Kisaan Die Tech Private Ltd. Br. ..........................................................................................9, 17

## I.     INTRODUCTION

### A.     Statement Of The Law

When the U.S. Department of Commerce ("the Department" or "Commerce") calculates antidumping ("AD") duties, its "overriding purpose" must be "to calculate dumping margins as accurately as possible." *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370, 1379 (Fed. Cir. 2013) (citing *Rhone Poulenc Inc. v. United States,* 899 F.2d 1185, 1191 (Fed. Cir. 1990)) ("*Bestpak*"). The need for accuracy may be suspended if the Department determines that a respondent has "failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b)(1). When this occurs the Department is permitted to apply an adverse inference in its selection of facts otherwise available. *Id.* The use of an adverse inference (also known as "adverse facts available" or "AFA") to determine an AD margin is seen as an "incentive to foreign exporters and producers to respond to Commerce's questionnaires." Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, at 868 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 ("SAA"). It helps to ensure that the party found to be uncooperative "does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." SAA at 870.

At the same time, this Court has held that Commerce may *not* penalize a cooperative party in a proceeding due to non-cooperation by an unaffiliated entity in the same proceeding. *SKF USA v. United States*, 675 F. Supp. 2d 1264, 1276-77 (Ct. Int'l Trade, 2009) ("The court cannot accept a construction of 19 U.S.C. § 1677e(b) under which the party who suffers the effect of the adverse interest is not the party who failed to cooperate."). The Federal Circuit Court of Appeals ("Federal Circuit") upheld this reasoning in *Changzhou Wujin* when it stated that "applying an adverse rate to cooperating respondents undercuts the cooperation-promoting

goal of the AFA statute." *Changzhou Wujin Fine Chemical Factory Co., Ltd. v. United States,* 701 F.3d 1367, 1378 (Fed. Cir. 2012).

The courts have also recognized that Commerce is not required to individually investigate each producer of subject merchandise. Instead, it may limit its review to a "statistically valid" selection of producers of subject merchandise or "exporters and producers accounting for the largest volume of subject merchandise." 19 U.S.C. § 1677f-1(c)(2). When the Department does this, the statute provides that Commerce must assign an estimated rate to those respondents not selected for individual review "equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins" and any rates based on AFA. 19 U.S.C. § 1673d(c)(5)(A). This is known as the "all others" rate.

If the dumping margins established for *all* individually investigated respondents *are* in fact zero, *de minimis*, or based on AFA, the statute instructs Commerce to "use any reasonable method to establish the estimated all-others rate," 19 U.S.C. § 1673d(c)(5)(B), as long as that rate is consistent with the "intent of the law," which, again, includes the calculation of AD margins "as accurately as possible." *Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001) (quoting *Lasko Metal Prods., Inc. v. United States,* 43 F.3d 1442, 1446 (Fed. Cir. 1994)). Unfortunately, the statute does not specify what qualifies as a "reasonable method" for calculating the all others rate in these instances.[1]

---

[1] The statute is silent as to how Commerce should calculate the all other rate in administrative reviews. *Stainless Steel Flanges from India*: Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review; 2018-2019 at 38 (Aug. 20, 2021) ("Final Results Memorandum"); Public Record ("P.R.") 169. The statute only speaks to how Commerce should calculate all others rates in LTFV investigations. It is only through case law, notably *Albemarle Corp. & Subsidiaries v. United States,* 821 F.3d 1345, (Fed. Cir. 2016), that parties to AD reviews have developed some understanding of how the Department will approach this part of its administrative practice. Today, it is Commerce's "normal practice" to use the LTFV practice for setting all others rates as guidance when calculating the all others rate in administrative reviews. Final Results Memorandum at 38; P.R. 169.

However, the SAA, which accompanied the passage of the statute, provides what has become known as the "Expected Method" for calculations made under 19 U.S.C. § 1673d(c)(5)(B). SAA at 873. The Expected Method instructs the Department to "weight average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available." *Id.* at 873. If that calculation is not feasible *or would result in a determination that would "not be reasonably reflective of potential dumping margins for the non-investigated producers,* Commerce may use any other reasonable method." *Id.* at 873 (emphasis added). In order to depart from the Expected Method, the courts have consistently held that the party seeking to depart from it must present substantial evidence that the Expected Method is not feasible *or would not be reasonably reflective of the potential dumping margins of the non-selected respondents. Albemarle Corp. & Subsidiaries v. United States,* 821 F.3d 1345, 1353 (Fed. Cir. 2016) ("*Albemarle*"); *PrimeSource Bldg. Prod., Inc. v. United States,* 581 F. Supp. 3d 1331, 1338 (Ct. Int'l Trade 2022) ("*PrimeSource*").

> **B.** **Statement Of The Facts**

The first administrative review of the AD order on *Certain Stainless Steel Flanges from India* covered 45 Indian producers and exporters of subject merchandise. *Stainless Steel Flanges from India*: Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review; 2018-2019 at 41 (Aug. 20, 2021) ("Final Results Memorandum"); Public Record ("P.R.") 169. Of those 45 respondents, seven asked the Department to conduct an administrative review of the AD order. P.R. at 1-2, 5-8, 10. However, the Department only selected one company to be reviewed and serve as the "mandatory respondent": Chandan Steel Limited ("Chandan"). Respondent Selection Memorandum (Mar. 13, 2020); P.R. 26.

In the final results of the first administrative review, Commerce determined that Chandan failed to cooperate. Final Results Memorandum at 22; P.R. 169. As a result, it assigned Chandan

a dumping margin of 145.25 percent based entirely on AFA. *Stainless Steel Flanges from India: Final Results of Antidumping Duty Administrative Review*; 2018-2019, 86 Fed. Reg. 47,619 (Aug. 26, 2021) ("*Final Results*"). Commerce never determined that the Plaintiff or any of the other respondents not selected for individual review failed to cooperate with the Department's proceeding to the best of their ability. Nevertheless, in the *Final Results* the Department gave these companies the same 145.25 percent rate it assigned to Chandan. *Id*.

The Plaintiff has no connection to Chandan. It is not affiliated with Chandan and it bears no responsibility for Chandan's alleged failure to cooperate with Commerce. The rate applied to both Chandan and the non-selected respondents does not represent any actual dumping determined to exist during the review period;[2] not by Chandan and certainly not by the non-selected respondents, including Plaintiff. Despite this lack of evidence of dumping during the period covered by the review, the Department chose to apply a total AFA rate to 44 non-selected respondents -- companies who had made themselves known to the Department, and who stood ready, willing, and able to cooperate with the agency's review had they ever been asked.

C. **The *Final Results* Are Not Based On Substantial Evidence And Are Not In Accordance With Law**

Contrary to its repeated assertion, the Department did *not* determine the all others rate in the *Final Results* based on the Expected Method. Instead, it applied the AFA rate assigned to the sole mandatory respondent to the non-selected respondents, including Plaintiff. Such a departure from the Expected Method requires an explanation from Commerce. *PrimeSource,* 581 F. Supp. 3d at 1338 ("the burden of proof lies with the party seeking to depart from the expected method"). That explanation was not provided in the *Final Results*.

---

[2] The Department corroborated its chosen AFA rate based on some of Chandan's transaction-specific margins from the preceding less than fair value ("LTFV") investigation, not Chandan's data from the period of review. Final Results Memorandum at 32; P.R. 169.

Assuming, *arguendo*, that Commerce *did* use the Expected Method to calculate the all others rate, that rate was not reasonably reflective of the potential dumping margins of the Plaintiff and the other uninvestigated respondents in the challenged review. *Cf. Bestpak,* 716 F.3d at 1379 (citing *Rhone Poulenc Inc. v. United States,* 899 F.2d 1185, 1191 (Fed. Cir. 1990)). The evidence on the record demonstrated beyond cavil that Chandan was deemed uncooperative by the Department and assigned a dumping margin based on total AFA (*i.e.*, 145.25 percent). The record also clearly showed that the uninvestigated respondents were not deemed uncooperative by the agency. Under these circumstances, the Department *cannot* punish Plaintiff and the other uninvestigated respondents by assigning them a total AFA rate, and it is no defense that Chandan was selected as the sole mandatory respondent.[3]

As we demonstrate below, regardless of the method used by the Department to calculate the all others rate in the challenged review, the Department was obligated to choose a rate that is reasonably reflective of the potential dumping margins of the Plaintiff and the other respondents not selected for individual review. Having selected only *one* mandatory respondent in the *first* administrative review of the AD order, the agency admittedly had limited choices. However, that does not excuse a violation of the law. For one thing, the Department could have selected two or more mandatory respondents.[4] It also had before it on the record of the instant review the results from the prior LTFV investigation. That segment of the proceeding covered respondents found to be both cooperative and uncooperative. As a result, it included calculated rates and rates based on AFA. In assigning an all others rate to the Plaintiff and the other non-examined respondents

---

[3] *Cf.* Final Results Memorandum at 38; P.R. 169 ("We find that application of the expected method is reasonable here because the record evidence does not rebut the presumption that margin for the mandatory respondent is representative.").

[4] As we discuss below, the courts have consistently held that a lack of substantial evidence will not be excused when it is at least partially due to procedural difficulties created by the agency's own actions. *See* Section II.B.2, *infra*.

that were never deemed uncooperative, the agency could have used the rate from the LTFV investigation assigned to the cooperative respondents. Instead, the Department reached back to the LTFV investigation, selected one rate that was based on total AFA, and applied that rate without adjustment to Plaintiff and the other cooperative respondents in the challenged review. That was error.

Finally, the government errs when it claims the Plaintiff is foreclosed from challenging the all others rate because it did not challenge the Department's selection of a single mandatory respondent during the administrative proceeding. Plaintiff is not contesting the selection of Chandan as a mandatory respondent. Rather, it contests the calculation of the "all others" rate based on this record.

## II.    ARGUMENT

### A.    The Department Did Not Apply The Expected Method To The Calculation Of The All Others Rate In The Challenged Review

The SAA states very clearly that the Expected Method requires the agency to "weight average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available." SAA at 873. In its Issues and Decision Memorandum the Department claims that it applied the Expected Method in this case. Final Results Memorandum at 38, 40-42, 44; P.R. 169 ("We find that the application of the expected method is reasonable here…"). The government suggests in its response brief that Commerce selected multiple mandatory respondents and based the challenged all others rate on the averaging of the rates assigned to these companies. Specifically, at page 37 of its brief the government states the agency "*average{ed}* the zero, *de minimis*, and facts available-based *rates* assigned to the mandatory *respondents*." Def. Br. at 37, ECF 52 ("Def. Br.") (emphasis added). The government is, at best, mistaken.

The Department selected only one mandatory respondent and it assigned that single respondent a rate based on total AFA. Final Results Memorandum at 38; P.R. 169. It then decided, based entirely on assumption, that this rate was appropriate for the Plaintiff and the other non-selected respondents who were never found to be uncooperative. There was no weight-averaging of multiple rates. Indeed, there was no averaging of any kind, just the imposition of one rate on the 44 respondents not selected for individual review.

This Court addressed a similar set of facts in *Godaco Seafood Joint Stock Co. v. United States,* 494 F. Supp. 3d 1294 (Ct. Int'l Trade 2021) ("*Godaco*"). In that case the Court found that Commerce did *not* apply the Expected Method because "Commerce did not weight-average the zero and de minimis margins and margins determined pursuant to the facts available." *Id.* at 1305. Instead, the Department "applied the 'any reasonable method' approach by using the one rate determined pursuant to AFA." *Id.*

In its response brief the government does its best to gloss over this fact. For example, it states that "that the expected method falls within the 'any reasonable method' umbrella established by the statute – it is among the potentially-reasonable options." Def. Br. at 44. It never states, however, that Commerce's imposition of a single rate (*i.e.*, the one assigned to Chandan), based entirely on AFA, is in fact an application of the Expected Method. It does not because it cannot.

As the party departing from the Expected Method, the Department bears the burden of proof and persuasion. First, it must explain why it chose not to use the Expected Method. *PrimeSource,* 581 F. Supp. 3d at 1338. Second, it must present substantial evidence that the Expected Method is not feasible *or would not be reasonably reflective of the potential dumping margins of the non-selected respondents. Albemarle*, 821 F.3d at 1352 (emphasis added);

*PrimeSource*, 581 F. Supp. 3d at 1338. As the court in *Albemarle* explained, a departure from the Expected Method must be "based on substantial evidence, that the separate rate firms' dumping is different from that of the mandatory respondents." *Albemarle*, 821 F.3d at 1352.

Rather than explain its departure from the Expected Method, the Department focuses incorrectly on why transposing one AFA rate over to an entire pool of non-selected respondents was allegedly an application of the Expected Method. Final Results Memorandum at 38-44; P.R. 169. The Department does not provide *any* information or explanation on why this rate is reasonably reflective of the non-selected respondents' dumping activity during the period of review. Instead, Commerce focuses on a lack of contradictory evidence, saying "42 of 44 non-examined companies have never been examined in any segment of the proceeding; thus, there is no evidence on this record that the 145.25 percent rate does not reflect their potential dumping margins." Final Results Memorandum at 43; P.R. 169. The Federal Circuit has consistently held that, when supporting statements with substantial evidence, the Department may not "{invoke} procedural difficulties that were at least in part a creature of its own making." *Bestpak*, 716 F.3d at 1378; *see also Linyi Chengen Import & Export Co., Ltd. v. United States,* No. 18-00002, Slip Op. at 27 (Ct. Int'l Trade Dec. 21, 2022) ("Commerce is not permitted to create a scarcity of information, to use that scarcity as justification for its determination, and to claim that a constraint on resources prevents further examination."). As it was the Department's decision to select only one mandatory respondent, this lack of information to support its determination is "a creature of its own making."

Because the Department did not follow the Expected Method, at a minimum, the challenged *Final Results* should be remanded back to the Department in order for it to explain, with adequate record evidence, that the dumping margin assigned to the over 40 non-selected

respondents is indeed reasonably reflective of their actual dumping activity during the period of review. If given this opportunity, we believe the agency will concede that a rate based entirely on AFA and assigned to a single uncooperative respondent does not reflect (reasonably or otherwise) the estimated dumping of dozens of cooperative, non-investigated respondents, including the Plaintiff, especially when many of these same companies were assigned a much lower dumping margin in the immediately preceding segment of the proceeding. *See* Kisaan Die Tech Private Ltd. ("KTD") Br. at 22-23; ECF No. 35-1.

**B.      The All Others Rate In The Challenged Review Is Not Reasonably Reflective Of The Potential Dumping Margins Of The Plaintiff And The Other Non-investigated Respondents**

Assuming, *arguendo*, that Commerce did use the Expected Method to calculate the all others rate, that rate was not reasonably reflective of the potential dumping margins of the Plaintiff and the other non-investigated respondents in the challenged review. *Cf. Bestpak,* 716 F.3d at 1379 (citing *Rhone Poulenc Inc. v. United States,* 899 F.2d 1185, 1191 (Fed. Cir. 1990)). As we demonstrate below, when setting that rate, the Department did not consider the "economic reality" of the non-selected respondents. *See Navneet Publ'ns (India) Ltd. v. U.S.*, 999 F. Supp. 2d 1354 (Ct. Int'l Trade 2014) ("*Navneet*").

**1.      Contrary to the government's assertion, the Department must consider the economic reality of the non-selected respondents when calculating the all others rate**

This court held in *Navneet* that when the Department calculates the all others rate, it must consider the "economic reality" of the non-examined parties. 999 F. Supp. 2d at 1363. The government disagrees. It claims Commerce "is not obligated to consider an interested party's 'alleged commercial reality'." Def. Br. at 39. It does so on two grounds.

First, the government accuses Plaintiff of ignoring a 2015 change in the law. According to the government, as a result of a change to 19 U.S.C. § 1677e in 2015, the Department is not obligated to consider a respondent's "alleged commercial reality" when determining an AD rate based on AFA. Def. Br. at 39. However, the statutory change highlighted by the government permits the Department to ignore commercial reality when the Department "use{s} an adverse inference under subsection (b)(1)(A)". 19 U.S.C. § 1677e(d)(3)(B). In other words, this provision only applies if the Department "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority." 19 U.S.C. § 1677e(b)(1). In the instant case, the Department did not find that the Plaintiff or any of the other non-examined respondents failed to cooperate with the review. Hence, the holding in *Navneet* applies.

In fact, the Department claims in its *Final Results* that it did not apply a rate based on total AFA to the Plaintiff and the other non-examined respondents. Instead, we are asked to believe that the rate assigned to these respondents happened by "operation of law" and "as a matter of law." Final Results Memorandum at 40; P.R. 169. Whether it did or did not apply a rate based on AFA to the Plaintiff and the other non-examined respondents, the holding in *Navneet* applies and the Department failed to consider the economic reality of the Plaintiff when determining the all others rate.

Second, the government maintains that the Department was free to ignore the economic realities of the Plaintiff and the other non-examined respondents when calculating the all others rate simply "because Chandan as the mandatory respondent was determined to be representative of the non-examined companies in this review." Def. Br. at 37. According to the government, the court's analysis should begin and end with this simple fact.

These and other attempts to defend the all others rate assigned to the Plaintiff in the challenged administrative review must fail. The SAA instructs that the use of adverse facts available is seen as an "incentive to foreign exporters and producers to respond to Commerce's questionnaires." SAA at 868. It makes sense that AFA, which may be based on something other than commercial reality, should be used only against parties that the Department determines to be uncooperative. The government's use of *PrimeSource* only serves to reinforce this point. Def. Br. at 38. The government notes that "the Federal Circuit has found that AFA rates may be representative of actual dumping because, 'if it were not so, {mandatory respondents} would have produced current information showing the margin to be less.'" *PrimeSource,* 581 F. Supp. 3d at 1340 n.10 (citing *Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1190 (Fed. Cir. 1990)). Unlike the mandatory respondent in the challenged review, the Plaintiff and other non-selected respondents had no opportunity to produce "current information showing the margin to be less" once the Department chose to investigate Chandan alone. Instead, the Department forced them to accept one AFA rate, based on limited information, as representative of their dumping behavior. As *Navneet* teaches, this decision ignores the Department's obligation to determine an all others rate that is as accurate as possible based on the "economic reality" of the non-examined respondents. *Navneet*, 999 F. Supp. 2d at 1363.

> **2.      There is no evidence on the record that the all others rate assigned to the Plaintiff accurately represents the economic reality of the non-selected respondents**

In its brief the government correctly notes that the SAA explicitly permits including rates based on AFA in the Expected Method for calculating the all others rate. Def. Br. at 38-40; SAA at 873. The Plaintiff does not contest this fact. However, the Plaintiff takes issue with using one

AFA rate, which may not incorporate "commercial reality" in its calculation,[5] as the *sole* basis for an all others rate, which, as described above, must be "as accurate{} as possible," *Bestpak,* 716 F.3d at 1379 (citing *Rhone Poulenc Inc. v. United States,* 899 F.2d 1185, 1191 (Fed. Cir. 1990)), and based on the "economic reality" of the non-selected respondents. *Navneet*, 999 F. Supp. 2d at 1363. Though the mandatory respondents are assumed to be representative of the non-selected respondents, *Albemarle,* 821 F.3d at 1353; *PrimeSource*, 581 F. Supp. 3d at 1338, "it is possible for the application of a particular methodology to be unreasonable in a given case." *Bestpak,* 716 F.3d at 1378 (citing *Thai Pineapple Canning Indus. Corp. v. United States,* 273 F.2d 1077, 1085 (Fed. Cir. 2001)). Moreover, the cases the government uses to support its use of AFA rates in calculating AD rates for non-selected respondents have much more robust factual records than the current case. For example, the court in *PrimeSource* focuses on historical information from several previous administrative reviews to demonstrate that the chosen rate, based on averaging an AFA rate and a zero rate, was consistent with several previously calculated dumping margins. 581 F. Supp. 3d at 1341-42. In addition, *Quihang Tire* involved multiple mandatory respondents. *See Quingdao Quihang Tyre Co. v. United States,* 308 F. Supp. 3d 1329, 1363 (Ct. Int'l Trade 2018). This indicates that multiple mandatory respondents provide a more complete view of an industry, and are thus more likely to be representative of actual dumping by non-selected respondents. Indeed, the Federal Circuit has recently held that a "reasonable number" of mandatory respondents upon which an all others rate may be based is "generally more than one." *YC Rubber Co. (North America) LLC v. United States*, No. 2021-1489, 2022 WL 3711377 at *4 (Fed. Cir. Aug. 29, 2022).

---

[5] *See* 19 U.S.C. § 1677e(d)(3).

Here, the Department selected only one mandatory respondent -- Chandan. Final Results Memorandum at 25; P.R. 169. This is precisely the situation discouraged in *YC Rubber*, and different than the situation in *Quihang Tyre*, where multiple mandatory respondents provided greater insight into the investigated market. In addition, as this is the first administrative review, we do not have a long history of previous antidumping rates to refer to when determining whether the current rate is reasonable or not, as the Court did in *Primesource*. Here, the Court can only use one historical point of reference, the LTFV investigation, where one respondent was given the current 145.25 percent margin based on AFA, and another cooperative respondent was given a far lower dumping margin of 19.16 percent. *Stainless Steel Flanges from India: Final Affirmative Determination of Sales at Less than Fair Value and Final Affirmative Critical Circumstances Determination,* 83 Fed. Reg. 40,746 (Aug. 16, 2018).[6] The Department itself acknowledges that there is little information on the record upon which to base its conclusion. It states "42 of 44 non-examined companies have never been examined in any segment of the proceeding," and that there is "no pattern of low or high margins in this proceeding." Final Results Memorandum at 43-44; P.R. 169. These statements demonstrate that there was limited data points upon which to conclude that the 145.25 percent margin assigned to the non-selected respondents is indeed based on their dumping activity during the period of review.

In addition, the government should not be permitted to argue that, because there is limited evidence on the record to refute the currently assigned rate, it is assumed to accurately represent dumping activity of the non-selected respondents. The Department attempts to make this

---

[6] This 19.16 percent rate was the "all others" rate from the LTFV investigation when the Department issued its Issues and Decision memorandum in August 2021. However, on September 8, 2021, the Department revised the "all others" rate from the LTFV investigation downward to 11.87 percent in response to a remand from this Court. *Stainless Steel Flanges From India: Notice of Court Decision Not in Harmony With the Final Determination of Antidumping Investigation; Notice of Amended Final Determination,* 86 Fed. Reg. 50,325 (Sept. 8, 2021). We refer to the 19.16 percent rate as the "all others" rate as it was the rate the Department had at the time it issued its Issues and Decision memorandum.

argument immediately following its acknowledgement that 42 producers have never been investigated in this administrative review when it says, "there is no evidence on this record that the 145.25 percent rate does not reflect their potential dumping margins." *Id.* at 43. The reason that there is limited evidence on the record is precisely because the Department decided to select only one mandatory respondent, and that one respondent did not, according to Commerce, provide usable data in this segment of the proceeding. The Federal Circuit has been skeptical of the Department justifying its rate determinations by "invoking procedural difficulties that were at least in part a creature of its own making." *Bestpak*, 716 F.3d at 1378. In addition, this Court reiterated its discomfort with the Department selecting only two mandatory respondents in *Linyi* due to the lack of information it created, writing: "Commerce is not permitted to create a scarcity of information, to use that scarcity as justification for its determination, and to claim that a constraint on resources prevents further examination." *Linyi Chengen Import & Export Co., Ltd. v. United States,* No. 18-00002, Slip Op. 22-150 at 27 (Ct. Int'l Trade Dec. 21, 2022). Thus, the Department's statements of representativeness of the non-selected respondents' actual dumping cannot be based merely on allegations that the there was no information on the record to refute its decision.

### 3.       The prior LTFV investigation demonstrates that the challenged all others rate was wrongfully decided

In its brief the government claims that Plaintiff did not provide record evidence to support the claim that the calculated all others rate does not reasonably reflect the non-selected respondents' dumping margins "beyond the mere suggestions that there may be a more representative method." Def. Br. at 43. As a preliminary matter, there is a procedural difference between the Plaintiff and the selected mandatory respondent. The Department found Chandan to be uncooperative, but it made no such finding for any of the non-selected respondents in this

review, including the Plaintiff. As an AFA rate assigned to a non-cooperative respondent is not required to have any connection to commercial reality, 19 U.S.C. § 1677e(d)(3), it is highly unlikely that any AFA rate assigned to an uncooperative respondent bears any connection to fully cooperative respondents like the Plaintiff.

Regardless, there is evidence on the record indicating that the assigned rate is far in excess of those assigned to cooperating respondents in previous segments of this proceeding. The government asserts in its brief that previous administrative reviews for similar products are not relevant to this case since they are old and dated; however, that statement ignores the LTFV investigation that immediately preceded this administrative review. In that segment of the proceeding the Department assigned cooperative respondents a dumping margin of 19.16 percent, well below the 142.25 percent margin assigned to the non-selected respondents based completely on AFA in the challenged adminstrative review. *Stainless Steel Flanges from India: Final Affirmative Determination of Sales at Less than Fair Value and Final Affirmative Critical Circumstances Determination,* 83 Fed. Reg. 40,746 (Aug. 16, 2018). This wide gulf between the rate assigned cooperating respondents in the LTFV investigation and the rate assigned to the sole mandatory respondent, Chandan, should have given the Department an indication that a lower rate for the non-selected respondents, who have never been found to be uncooperative, would be necessary.

The government itself uses the record in the prior LTFV investigation as the basis for corroborating the AFA rate assigned to Chandan; thus, data from that investigation should be a relevant point of reference in the contested administrative review. *See* Final Results Memorandum at 32; P.R. 169. Indeed, since this is the first administrative review under this AD order, the agency does not have a robust history of recently assigned dumping margins to show

15

that the assigned rate is reasonable, like the support for the assigned rates in *Primesource*. *PrimeSource*, 581 F. Supp. 3d at 1341-42. As a result, the immediately preceding LTFV investigation, which featured a rate assigned to a cooperating respondent, should be seen as probative for the non-selected respondents. Unlike Chandan, the non-selected respondents have not been found uncooperative and, therefore, should have a rate other than the AFA rate assigned to Chandan.

>    **4.    Exhaustion of administrative remedies is not relevant in the instant case, as the Plaintiff is not contesting the selection of the mandatory respondents**

The government argues that the non-selected respondents, including Plaintiff, are not permitted to object to the all others rate assigned to them. Def. Br. at 41-42. According to the government, they are not permited to challenge this rate because 11 months before the agency assigned that rate to them, they did not challenge the Department's selection of Chandan as the sole mandatory respondent.[7] *Id.* at 41-42. What this argument lacks in merit, it makes up for in audacity.

Plaintiff does not contest Commerce's decision to select Chandan as the sole mandatory respondent in the instant administrative review. Plaintiff does not contest the agency's determination that Chandan did not cooperate with the review to the best of its ability, nor Commerce's decision to assign Chandan a dumping margin based entirely on AFA (*i.e.*, "total AFA"). Plaintiff does not even challenge Commerce's selection of the highest rate from a prior segment of the instant proceeding as the AFA to be assigned to Chandan. Instead, Plaintiff contests the calculation of the all others rate and whether it accurately represents the non-selected

---

[7] The 11-month time period references the gap between the Department issuing the Respondent Selection Memo on March 13, 2020 and the Preliminary Results on February 18, 2021.

respondents' dumping during the period of review. As noted in its complaint, its Rule 56.2 motion for judgment, and the above arguments, Plaintiff contests "whether the Department's decision to apply the dumping margin assigned to a sole mandatory respondent based on total AFA to all other respondents not selected for review through the "all others" rate is supported by substantial evidence and otherwise in accordance with law." *See* KDT Br. at 2. *See also* Complaint at ¶ 21.

Rather than address these issues and arguments squarely, the government tries to sidestep them. It does so by discussing court cases where the plaintiff objected to the agency's selection of mandatory respondents. In *DuPont Teijin*, for example, the plaintiff argued "it should have been selected as a mandatory respondent and given its own rate." *DuPont Teijin Fims China Ltd. v. United States,* 7 F. Supp. 3d 1338, 1356 (Ct. Int'l Trade 2014). In *Amanda Foods* the plaintiff argued "it was unreasonable for the Department to limit its review to three mandatory respondents, when it could have included Fish One as a fourth." *Amanda Foods Vietnam Ltd. v. United States,* 807 F. Supp. 2d 1332, 1345 (Ct. Int'l Trade 2011). Similarly, in *Asahi Seiko* the plaintiff argued it was "unlawfully … deprived of a dumping margin determined according to its own sales and of the opportunity to be assigned a margin contributing to Asahi's future revocation from the antidumping duty order." *Asahi Seiko Co. Ltd. v. United States*, 755 F. Supp. 2d 1316, 1322 (Ct. Int'l Trade 2011). Finally, *Schaeffler Italia* is distinguishable because the court in that case specifically stated that, due to certain procedural issues, the "relief could occur only through a remand order directing Commerce to calculate a margin using {Plaintiff's} sales during the POR" and that, because the Plaintiff had withdrawn its request for voluntary

17

respondent status, it had failed to exhaust its administrative remedies. *Schaeffler Italia S.R.L. v. United States,* 781 F. Supp. 2d 1358, 1363-64 (Ct. Int'l. Trade 2011).[8]

In essence, the government argues that Plaintiff should have anticipated that the Department would unlawfully calculate the all others rate, and sought voluntary respondent status in the early stages of the challenged review in anticipation of contesting the all others rate. This allegation is particularly unfair to the non-selected respondents in this review, who made themselves known to the Department by requesting administrative reviews. P.R. at 1-2, 5-8, 10. It was the Department's decision to select Chandan, a respondent who had cooperated during the LTFV investigation that preceded the instant administrative review. *Stainless Steel Flanges from India: Final Affirmative Determination of Sales at Less than Fair Value and Final Affirmative Critical Circumstances Determination,* 83 Fed. Reg. 40,746 (Aug. 16, 2018). Thus, the non-selected respondents had no way of knowing that the selected mandatory respondent would, in the view of Commerce, not cooperate during this administrative review, and that the Department would unlawfully apply this AFA rate without modification to the non-selected respondents. Once the Department applied Chandan's AFA rate to the non-selected respondents in the preliminary phase of the review, many non-selected respondents, including Plaintiff, filed objections. *See* Letter from Peter Koenig & Jeremy Dutra to U.S. Department of Commerce (Apr. 2, 2021); P.R. 142. Thus, contrary to the Department's argument, the non-selected respondents did not "wait and see whether the all-others rate is too high for their liking." Def. Br

---

[8] The procedural issues involved, that the Department received two questionnaires: one questionnaire from the plaintiff in that case and another from the sole mandatory respondent, and that the relief requested would be to review the initial questionnaire from the plaintiff, who had withdrawn its voluntary respondent questionnaire, *Schaeffler Italia S.R.L. v. United States,* 781 F. Supp. 2d 1358, 1361 (Ct. Int'l Trade 2011), do not exist here. The Department only has questionnaires from the selected mandatory respondent, and there is no single plaintiff who provided a questionnaire that could have been investigated to provide relief. Rather, the government should look to information elsewhere on the record to develop a rate more representative of the non-selected respondents' actual dumping practices than one assigned to a mandatory respondent that the Department found uncooperative.

18

at 41. Rather, they made themselves known to the Department prior to the mandatory respondent selection process, and once they realized that the Department might apply an unlawful all others rate based entirely on one AFA rate, they objected through their own case brief. These willing participants in the administrative review process should not be penalized for the Department's wrongful calculation of the all others rate.

**III.     CONCLUSION**

The Department's decision to assign an AFA rate given to one mandatory respondent to non-selected respondents who have never been found to be uncooperative is not supported by substantial evidence and otherwise not in accordance with law. As a preliminary matter, the government did not calculate the all others rate in the underlying administrative review based on the Expected Method. As a result, the Department should provide an explanation as to why its departure from the Expected Method was supported by substantial evidence, as the current Final Results Memorandum simply states that there is no evidence on the record that the currently assigned all others rate is not representative of the non-selected respondents' practices.

Even if the Court disagrees with Plaintiff and determines that the challenged all others rate reflects an application of the Expected Method, that rate does not accurately reflect the "economic reality" of the non-selected respondents, as the Department is required to do by law. Instead, it reflects a punitive rate based on adverse assumptions having nothing to do with Plaintiff's potential dumping margin during the challenged review. In addition, the assigned rate for a cooperative respondent in the preceding LTFV investigation was far lower than the rate assigned to the non-selected respondents in the instant review. Like the cooperating respondent in that investigation, the non-selected respondents in the challenged administrative review, including the Plaintiff, have never been deemed uncooperative. Thus, the 19.16 percent rate assigned to the cooperating respondent in that investigation is evidence that the actual dumping

of non-selected respondents in the contested review is closer to the non-selected respondents' actual dumping.

The non-selected respondents had no affiliation to the mandatory respondent that was ultimately assigned an AFA rate based on its alleged lack of cooperation. They made themselves known to the Department through their requests for administrative reviews and, once they saw that the all-others rate might be calculated in a method contrary to law, they attempted to rebut the Department's determination in the final phase of the administrative review. They should not be estopped from contesting this unlawful calculation of the all others rate because they did not contest the agency's mandatory respondent selection process. It was the Department who wrongfully calculated the all others rate, not the non-selected respondents.

Respectfully submitted,

Duane W. Layton
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C.  20006
Tel: (202) 263-3000

*Counsel to Kisaan Die Tech Private Ltd.*

Dated: January 17, 2023

Certificate of Compliance with Chambers Procedures 2(B)(1)

The undersigned hereby certifies that the foregoing brief contains 6,931 words, exclusive of the corporate disclosure statement, table of contents, table of authorities, glossary of case-specific acronyms and abbreviations, and certificates of counsel, and therefore complies with the maximum 7,000 word count limitation as set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

By: /s/

Duane W. Layton