IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| KISAAN DIE TECH PRIVATE, LTD., *et al.*, ) ) ) | |
| Plaintiffs, ) ) | Consol. Court No. 21-00512 |
| v. ) ) | |
| THE UNITED STATES, ) ) | |
| Defendant. ) | |

**PLAINTIFF CHANDAN REPLY TO
DEFENDANT UNITED STATES RESPONSE TO
CHANDAN MOTION TO RECONSIDER**

March 25, 2024

Peter Koenig
Squire Patton Boggs
Counsel to Chandan

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I. COMMERCE'S DECISION DID NOT SAY THAT AFA ON CHANDAN COULD JUST REST ON CLAIMED MISSING WINDOW PERIOD SALES.  IT IS UNLAWFUL TO REWRITE  THE COMMERCE DECISION TO SO SAY. ....................................................... 1

II. AFA WAS IMPERMISSIBLE FOR 99.6% OF SALES FOR WHICH FULL INFORMATION WAS IN THE RECORD TO CALCULATE THE DUMPING MARGIN. 3

III. CHANDAN'S ARGUMENT HERE RESTS SOLELY ON THE RECORD EVIDENCE. AND MADE BASED ON CHANDAN FILINGS MADE WITHIN COMMERCE SET DEADLINES. ....................................................................................................................... 8

IV. CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

19 U.S.C. 1673d ................................................................................................................6

**Cases**

*Auer v. Robbins*,
    519 U.S. 452 (1997) ....................................................................................................2

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988) ....................................................................................................2

*Christopher v. SmithKline Beecham Corp.*,
    567 U.S. 142 (2012) ....................................................................................................2

*Grobest & I-Mei Indus. (Viet.) Co. v. United States*,
    815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ..............................................................9

*Mannesmannrohen-Werke AG v. United States*,
    23 CIT 826, 77 F.Supp.2d 1302 (Ct. Int'l Trade 1999) ..............................................3

*Marmen Inc. v. United States*,
    Slip Op. 21-148 (Ct. Int'l Trade 2001) .......................................................................9

*NTN Bearing Corp. v. United States*,
    74 F.3d 1204 (Fed. Cir. 1995) ....................................................................................9

*Shanghai Taoen Int'l Trading Co., Ltd. v. United States*,
    360 F.Supp.2d 1339 (Ct. Int'l Trade 2005) ................................................................3

*Timken U.S. Corp. v. United States*,
    434 F.3d 1345 (Fed. Cir. 2006) ..................................................................................9

**Other Authorities**

CIT Rule 59 ......................................................................................................................1

CIT Rule 60 ......................................................................................................................1

The U.S. Department of Commerce imposed an AFA (total adverse facts available) 145.25% dumping import duty margin on Chandan Steel Limited on the stated basis of claimed deficiencies in Chandan's questionnaire responses. See Commerce, *Stainless Steel Flanges from India, Final Results of the Antidumping Duty Administrative Review: 2018-2019*, 86 FR 47619 (Aug. 26, 2021), and the accompanying August 20, 2021 Commerce Memorandum, *Stainless Steel Flanges from India: Issues and Decision Memorandum (IDM) for the Final Results of the Antidumping Duty Administrative Review; 2018-2019*, Commerce Access Barcode 4154621-02, Public Record (PR) Document 169 (PR169) of the October 25, 2021 Index of the Administrative Record, Electronic Court File (ECF) 14-2 (ECF 14-1 is the confidential administrative record).

Before this Court, Plaintiff Chandan challenged that Commerce Decision in Chandan's June 30, 2022 opening brief (ECF 37) and Chandan's January 17, 2023 Reply Brief (ECF 59). On December 8, 2023, the Court Opinion sustained Commerce's Decision thereon in Slip Op. 23-172.  ECF 62.  On January 8, 2024, Chandan moved for this Court to reconsider its Opinion. ECF 63.  On March 4, 2024, Defendant United States responded.  ECF 68.  That United States response further confirms that the Court's Opinion rested has manifest error, warranting reconsideration.

The United States admits (at its page 1) that this Court grants a motion to reconsider its Opinion (a) under Rule 59, when its opinion has manifest error (e.g., a serious evidentiary flaw); and, (b) under Rule 60, when its opinion has a mistake, oversight or omission.  Respectfully, all are the case here.

**I.   COMMERCE'S DECISION DID NOT SAY THAT AFA ON CHANDAN COULD JUST REST ON CLAIMED MISSING WINDOW PERIOD SALES.  IT IS UNLAWFUL TO REWRITE THE COMMERCE DECISION TO SO SAY.**

As the United States said (at 1-3), Commerce's Decision here rests on claimed Chandan errors as to: (1) window period, comparison market sales; (2) production costs; and, (3) price,

discounts, and duty refunds. Chandan argued that all three – i.e., "(1)" to "(3)" – were not supported by the statutorily required substantial evidence of record and thus Commerce's Decision is not in accordance with law. See Chandan Reconsideration Motion at 3-5; Chandan Opening Brief at 6-10 and 15-25; Chandan Reply at 4-14, and detailed record cites therein (all incorporated by reference herein; they have never really been addressed, for reasons noted below and in Chandan's Reconsideration Motion). The Court Opinion took no issue Chandan 's argument that "(2)" and "(3)" were unsupported by substantial evidence of record and thus not in accordance with law.

     As to the above, as the United States said (at its pages 1-3), the Court's Opinion (at pages 22-23) only sustained Commerce's Decision as to "(1)" and said that was sufficient to affirm Commerce's Decision. However, the Commerce Decision (*IDM* at pages 8, 10-16, 18 & 21) rested on the claimed cumulative, aggregate impact of all three claimed errors – i.e., "(1)" to "(3)"– saying that individually "(1)," "(2)" or "(3)" alone cannot support AFA on Chandan. See also Chandan Opening Brief at page 34. The Court Opinion declined to affirm the Commerce Opinion as "(2)" and "(3)." Respectfully, the Court Opinion cannot (as it in fact did) affirm Commerce's Decision on claim that "(1)" suffices to support Commerce's Decision as that is not what the Commerce Decision said; rather the Commerce Decision said the opposite. The Court Opinion cannot affirm a Commerce Decision for reasons that the Commerce Decision did not say – i.e., here, that "(1)" was sufficient and "(2)" and "(3)" are not needed for AFA on Chandan. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (first quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988); and then quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997). The Court Opinion thus has manifest error.

The below makes it quite clear why the Commerce Decision itself said that "(1)" alone was insufficient to impose AFA on Chandan.

## II. AFA WAS IMPERMISSIBLE FOR 99.6% OF SALES FOR WHICH FULL INFORMATION WAS IN THE RECORD TO CALCULATE THE DUMPING MARGIN.

As indicated above, the Court said that, even if Chandan were correct as to "(2)" and "(3)" – which again the Court did not address, but took as a given for purposes of the Court's Opinion – Chandan's purported repeated misreporting as to "(1)" alone precluded Chandan from prevailing on the merits. So we now focus on "(1)." Each United States point thereon shows manifest error and confirms such manifest error in the Court Opinion.

The United States said (at its page 3) that:

The Court further explained that "{a} reliable comparison market sales database for matching with a U.S. sales database is fundamental and essential for the Department's ability to calculate a weighted average dumping margin." Op. at 23. Therefore, even if the reporting errors claimed by Commerce were "nonexistent, minor, or inconsequential," the Court was "not able to presume that the omission of sales of smaller-size flanges occurring in window periods outside of the POR could be so described." *Id.* at 22-23.

Chandan did not ask the Court to so presume. That was not Chandan's argument. The United States is refuting imaginary argument that Chandan did not make in its motion to reconsider or ever. That is manifest error.

Rather, in its argument Chandan demonstrated from the record that Chandan extensively cited that any error did not affect 99.6% of the U.S. sales, as to which a dumping margin could be fully and accurately calculated from the record using Commerce's established dumping margin methodology. See Chandan Reconsider Motion at 3-4, Chandan Opening Brief at 6-10 and Chandan Reply at 4-7 and extensive record cites therein. We incorporate it here by reference since to date no one (not Commerce, the United States or the Court Opinion has addressed). The Court did not mention, much less address, that specific, extensive, detailed

record analysis in the Chandan briefs to the Court that 99.6% of the U.S. sales had full needed window period sales to fully and accurately calculate the dumping margin per Commerce's established dumping margin methodology. Nor did the United States ever before this Court. Take Chandan's briefs and look at the record before this Court and Commerce. The United States claims, with the Court Opinion, that even if the reporting errors as to window period sales were non-existent or minor – is not disputing that -- total AFA is warranted, which is what Commerce did and what the Court affirmed. That is manifest error.

As to the demonstrated 99.6% of U.S. sales for which there are no missing window period sales to calculate the dumping margin, adverse inferences are unlawful. To not use Chandan's questionnaire responses, and instead use facts available, much less adverse facts available, under the statute Commerce must (a) show that not only was the respondent uncooperative but also (b) that the missing information is significant. *Mannesmannrohen-Werke AG v. United States*, 23 CIT 826, 839, 77 F.Supp.2d 1302, 1313-14 (1999). *Shanghai Taoen Int'l Trading Co., Ltd. v. United States*, 360 F.Supp.2d 1339 (Ct. Int'l Trade 2005) at 1344; Chandan Reconsider Motion at 3, Chandan Opening Brief at 5-6, 9 & 23-24 (and extensive cites therein), Court Opinion at 7-8, and cites therein. The Commerce Decision, the Court Opinion and the United States have yet to do so – i.e., show "(b)" -- as to the 99.6% of U.S. sales where there are no missing window period sales needed to calculate the dumping margin under Commerce's established dumping margin methodology. They have read "(b)" right out of the law. It is insufficient just to explain how window reporting periods work, as done here. Still must show that there was missing information to calculate the dumping margin as to these U.S. sales under Commerce's established dumping margin methodology, which has not been done as to 99.6% of

U.S. sales, as Chandan extensively documented with specific record cites, as to which there was no real response.  Rather, there is outright refusal to look at the record.

The apparent claim that there were "repeated" errors here – i.e., which is as to the 0.4% of U.S. sales – only addresses "(a)" above and does not address that the dumping margin could be calculated as to the 99.6% of U.S. sales.  It violates Court precedent cited above that must also show that missing information was significant as to the U.S. sales for which adverse facts were applied. That is manifest error.

If the Court and the United States are saying (as seems) that a respondent's questionnaire responses must be absolutely 100% totally error free, or else totally reject everything, that violates long-established, accepted law of this Court cited above, its reviewing court the Federal Circuit and Commerce practice.  The United States cites no authority for such a view, nor does the Court Opinion.  Again, manifest error.

The United States then said (at its page 4) that:

As the Court explained in its opinion, in administrative reviews of Commerce's antidumping duty orders, Commerce will, in appropriate instances, compare the export price (or constructed export price) of an individual U.S. sale to an average normal value based on a contemporaneous month in a comparison market. *See* Op. at 11.  If there are no sales during the preferred month, Commerce may base normal value on identical or similar sales in a "window period," which extends from three months before and until two months after the U.S. sale.  *See id.*

That is correct.  But that is just the start of the legally required analysis.  Indeed, Chandan so stated that at the starting point of its argument to this Court, where Chandan then proceeded to demonstrate from the record (extensive record cites) that the dumping margin could be fully and accurately calculated for 99.6% of the U.S. sales under Commerce's established dumping margin methodology, and at best perhaps not for only 0.4% of U.S. sales. See Chandan Reconsider Motion at 3-4, Chandan Opening Brief at 6-10 and Chandan Reply at 4-7 and extensive record cites therein.  It is revealing that Commerce and the United States never run Commerce's

5

dumping margin program on the data of record to show otherwise.  Rather, the United States just notes Chandan's starting point, but then fails to demonstrate any error in Chandan's ensuing analysis with full citations to the record to get to the 99.6% figure.  Nor did the Commerce Decision or the Court Opinion.

      The United States then said (at its page 4) that:

Here, Commerce requested that Chandan provide all comparison-market sales for the relevant window period.  *See id.* at 11-12.  In response to these requests, Chandan provided three deficient responses – one on June 30, 2020, a second on September 11, 2020, and a third on December 9, 2020.  *See id.* at 11-14.  As observed by the Court, Chandan has conceded that its responses to Commerce's requests were deficient.  *See* Op. at 12-13 (citing Chandan Mot. for J. at 11, ECF No. 37).  Consistent with this concession, Chandan does not presently argue that it provided adequate information.  Chandan instead argues that that the window period sales missing from its reporting were "{a}t best . . . only even potentially needed to calculate the dumping margin of an inconsequential portion . . . of the U.S. sales."  Pl. Mot. at 3-4.

      Chandan disagreed, and still does, that its responses were deficient as to the questions that Commerce actually asked as to the window period.  Chandan Opening Brief at 11 and 25-26; Chandan Reply at 3-4, 7 and 18-19. That can be a basis of a Federal Circuit appeal.  But that is not the basis of Chandan's motion to reconsider here. See Chandan Reconsider Motion at 2. The United States misses the mark here, refuting imaginary argument that Chandan did not make in its motion to reconsider.  That is manifest error.

      Rather, the basis of Chandan's motion to reconsider is that, the above notwithstanding, Commerce had the data to calculate the dumping margin for 99.6% of the U.S. sales and the above is only as to the remaining 0.4% of U.S. sales. See Chandan Reconsider Motion at 3-4, Chandan Opening Brief at 6-10 and Chandan Reply at 4-7 and extensive record cites therein. The United States keeps avoiding that key issue and cited record.  The United States is exhibiting the proverbial two ships passing in the night, non-responsive to our argument as to reconsideration.  The United States is repeatedly promoting manifest error by this Court.

6

The United States then says (at its page 5):

> Going further, however, the Court was correct to conclude that Chandan's insignificant-percent-of-sales argument was "misguided." Op. at 20. As the Court correctly held, "Commerce must be able to obtain from cooperative respondents, on a timely basis, a reliable comparison market database in order to calculate <u>a weighted average dumping margin.</u>" *Id.*; *see Yantai Timken Co. v. United States*, 521 F. Supp. 2d 1356, 1371 (Ct. Int'l Trade 2007) ("Due to stringent time deadlines and the significant limitations on Commerce's resources, it is vital that accurate information be provided promptly to allow the agency sufficient time for review."). "As of the time {Commerce} issued the Preliminary Results, it still lacked reporting of sales of Chandan's smaller-sized flanges that occurred outside the POR, which sales were unavailable for comparison with U.S. sales." *Id.*; *see* Issues and Decision Memorandum at 7-11 (P.R. 169). (emphasis added)

Here, the United States says nothing new than what said above and has already been addressed above. Nothing more need be said.

Still, note however that the above discussion is as to a <u>weighted-average dumping margin</u>, which is as to a Commerce *19 U.S.C. 1673d investigation* following the filing of an antidumping petition so requesting, and cash deposits as to dumping import duty margins going forward.   Here, we are in a Commerce *19 U.S.C. 1675 administrative review* following the original investigation, where the issue is now the <u>individual dumping import duty margin to be assessed on each individual U.S. sale</u>.  The issue here is the final assessment of antidumping import duties to be actually paid on individual U.S. sales, based on the calculation of the actual dumping import duty margin on each individual U.S. sale – i.e., U.S. sale-by-US. sale dumping margin analysis. 19 CFR 351.213.  That is not what a weighted-average dumping margin is. The difference between the two (i.e., weighted-average versus individual U.S. sale dumping margin analysis), and the resulting impact, is huge.  One is a cash deposit pending Commerce's administrative review decisions.  The other is the actual antidumping import duties finally assessed on individual  U.S. import entries after a Commerce administrative review.  The dumping margin can be calculated on 99.6% of the U.S. sales here in this administrative review. See above.  Again, manifest error not to do so.

7

Respectfully, it is concerning and regrettable that the United States (i.e., Commerce) continue to conflate and confuse the above and other issues to this Court and instead raise imaginary issues that are actually not the issues at hand.

### III.  CHANDAN'S ARGUMENT RESTED SOLELY ON ITS CITED RECORD EVIDENCE.  ALL CITED CHANDAN ARGUMENTS HERE WERE MADE WITHIN COMMERCE SET DEADLINES.

The United States then said (at its page 6) that:

The Court rejected Chandan's "implied premise" that Commerce was obligated to examine additional information that Chandan later submitted, on March 16, 2021, and use it to calculate a dumping margin. *Id.* To the contrary, "statute and regulation{} allowed the rejection of this information and its exclusion from the record." *Id.*; *see also id.* at 17 (citing 19 U.S.C. § 1677m(d) and 19 C.F.R. § 351.301 as authority for Commerce's rejection of untimely submissions).  "Thus, Commerce was under no obligation to use this information or to review it to determine the degree to which the omission of the information from the database submitted earlier would have affected adversely the calculation of a dumping margin." Op. at 20.  Commerce acted within its discretion by rejecting Chandan's untimely submissions.  And in the absence of that information, there is no support in the record for Chandan's claim that the missing window period sales were not applicable to 99.6 percent of U.S. sales.

There was no "implied premise" here.  That claim is wholly unsupported.  Rather, Chandan was arguing solely from cited record evidence, as a review of its argument and record cites indicates (too bad the United States and Commerce refuse to even look).  Chandan Opening Brief at 6-10 and Chandan Reply at 4-7.  All can just look at Chandan's record cites.  Actually, if it were otherwise, the United States and Commerce would have moved to strike Chandan court briefs and argument below on the basis that the cited evidence not in the record and the Court and Commerce would have stricken Chandan briefs filed with the Court and below as to the specific arguments raised here.  The United States did not. Commerce did not.  The Court did not.  Did not happen.  The cited record is all in the record before this Court and Commerce below.  All can easily check that.  Just do it.  No one has said that Chandan's cited record here was not in the record.  It is.

8

Separately, Chandan did argue that there was additional submitted evidence that Commerce should have accepted into the record as a matter of law but did not. Chandan Opening Brief at 14-15; Chandan Reply at 15-18. That is a separate argument that Chandan is not asking for reconsideration of here. Chandan Reconsider Motion at 2 and cites therein. Chandan leaves that separate and distinct argument for a Federal Circuit appeal. Chandan rests its argument here on the information that Commerce accepted into the record, as all Chandan record cites confirm. Just check.

To be charitable, here the United States is erroneously referencing the immediately above Chandan separate argument. To be less charitable, the United States is flatly mistating the record before this Court and Commerce and the facts. Anyone can check/verify that for themselves. Look at Chandan record cites to the record before this Court and Commerce.

Yet again, regrettably, the United States conflates separate and distinct issues to confuse, and actually is not addressing Chandan's actual argument but rather some imaginary one in the United States' imagination.

Finally, the United States said (at its page 6) that:

Indeed, it is not even clear that the proffered information would have supported Chandan's assertion. As we explained in our response to Chandan's Rule 56.2 motion, Chandan made this argument (after Commerce issued its preliminary results) by combining two flawed versions of its comparison market sales database, with no reason to believe that the combination would yield reliable results. *See* Def. Rule 56.2 Resp. at 21, ECF No. 52; *see also* Pl. Rule 56.2 Motion at 9 n.14 (asserting that only 0.6 percent of U.S. sales are impacted based on "combining record databases CSLHM03 and CSLAR1HM03"). In other words, Chandan's untimely submission only carried over the errors of its prior deficient responses.

Multiple manifest errors here:

   1. Commerce only first applied adverse inferences against Chandan in its preliminary decision. Only then did Commerce give Chandan notice of the adverse facts issue to address. At the same time, Commerce, per standard procedure, set a time schedule for parties to comment on

9

its preliminary decision.  Via its case brief filed at Commerce, Chandan timely commented on the preliminary decision where the cited comments are comments in the record.  Chandan Reply at 3; PR226, January 3, 2022 (Commerce extension to interested parties to comment on Commerce's preliminary decision); Chandan's May 4, 2021 case brief comments on Commerce's preliminary decision that are in the record, CR174; CR175; PR227.

       Now the United States is claiming that Chandan had no right to comment on Commerce's preliminary decision even as to comments limited to record evidence, without any support or explanation for the claim. The United States would have it that parties are not permitted to comment on a preliminary decision, despite Commerce setting up a comment procedure per Commerce's standard practice.  All cited Chandan comments were based on the record before Commerce, else Commerce would have rejected them, which Commerce did not. The United States is again off mark, not discussing the situation at hand here or on point authority as to.  The United States is discussing where a party's arguments rely on new facts provided after a preliminary decision where, as to Chandan's argument here, Chandan did not do so, nor does the United States support otherwise as to Chandan's argument here.

    2. As a matter of standard practice, Commerce combines and analyzes databases in carrying out its dumping margin calculations. Chandan Opening Brief at 9; Chandan Reply at 5. Commerce combines comparison market, U.S. sales and Section D cost excel/SAS databases for analysis to calculate dumping margins.  That is what Commerce does.  Commerce combines individual databases to so do as well.  Commerce routinely receives huge numbers of excel/SAS files that it analyzes in dumping cases.  That is Commerce practice.  The United States does not deny it.

Rather, in calculated ambiguity, the United States here coyly says that Commerce is not obliged to follow its practice or to consider record data. Failure to consider record evidence violates the statutory requirement that Commerce decisions be supported by substantial evidence of record and after considering the record as a whole, including evidence that detracts from a conclusion. Chandan Opening Brief at 3-4. Here, the United States is brazenly saying that Commerce is entitled to violate the statute which it administers and gives it its sole authority to act.

It is undisputed that the two databases are in the record. Chandan cited the record thereon. Chandan did the analysis of the two databases in the record to get to the 99.6% figure and provided record citations thereto. Whether the two databases are combined or treated separately, it is the same analysis. Commerce's declining to combine the two databases or otherwise consider the two databases that are in the record is a red herring, neither here nor there, as can still do the analysis as Chandan did for the record. Commerce cannot justify a decision by sticking its head in the sand and refusing to consider the record, as it professes to do here. That violates the statutory requirement that Commerce decisions must be based on substantial evidence, considering the record as a whole. Nor did Commerce claim any burden from looking at the databases. It is unlawful for Commerce to decline to look at provided data in the record simply because it does not want to, and especially where there is no demonstrated (or here even claimed) burden to Commerce from looking at it and instead to just speculate that there is significant error. *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995); *Timken U.S. Corp. v. United States*, 434 F.3d 1345 (Fed. Cir. 2006); *Marmen Inc. v. United States*, Slip Op. 21-148 at 15 (Ct. Intl Trade 2021); *Grobest & I-Mei Indus. (Viet.) Co. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012). The positions the United States and

Commerce are taking here we are not aware of ever doing, much less as a matter of practice. None of the United States' legal cites are on point as to the specific situation here.

      3. Finally, the United States claims here that the two databases to be combined are deficient. But the claim is that they are deficient because of claimed reasons "(2)" and "(3)" above. But Chandan detailed that the record evidence that demonstrated that they were not deficient in these regards and the Court and the United States do not dispute that and say are only addressing "(1)". See above. So that United States goes full circle and flatly contradicts itself, falls on its own sword.

## IV.   CONCLUSION

      In sum, respectfully, and if we may say, the United States is using the same smoke and mirrors approach it did before to have this Court not focus on the true issues here and Chandan's actual arguments. Multiple red herrings. The United States' continued effort to confuse and conflate, is concerning. The United States is just trying to play "hide the ball" and repeatedly going down the proverbial rabbit hole.

      We appreciate the Court's attention to this matter.

                                  Respectfully submitted,

                                  */s/ Peter Koenig*
                                  Peter Koenig
March 25, 2024                  Counsel to Chandan

**WORD COUNT CERTIFICATE OF COMPLIANCE**

This brief was prepared using Microsoft Word with 12-point Times New Roman font. In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this motion complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2B(1) of the Chambers Procedures, undersigned certifies that this brief contains 4103 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Respectfully submitted,

*/s/ Peter Koenig*
Peter Koenig Counsel to Chandan Steel Limited

March 25, 2024